(No. 5559. Decided August 7, 1905.)

Edward F. Sweeney *et al., Appellants,* v. Frank Waterhouse & Company, *Respondent.*[1]

Carriers — Contract of Carriage — Construction — Delivery at Ship's Tackle—Sale in Transitu Without Delivery. A shipping contract of a consignment of goods, to be delivered to the consignors or order "at ship's tackle," is intended to describe the place of delivery, and does not annex a condition to a contract of sale *in transitu* preventing a sale without such delivery.

Same—Failure to Deliver—Conversion—Action by Consignors— Defenses—Sale In Transitu and Transfer of Title—Right of Assignees. An action as for a conversion for the failure of a carrier

1 Reported in 81 Pac. 1005.

to deliver goods shipped, cannot be maintained by the consignors of goods to be delivered at a certain port to self or order, where the consignors sold all the goods *in transitu*, and assigned and delivered the bills of lading to the purchasers, before the arrival of the vessel, who demanded and received a portion of the goods; since such sale and assignment passed the title to the goods, and rendered the carrier liable to the purchasers for failure to deliver.

SAME—TRUSTS. Such action cannot be maintained by the consignors as trustees of an express trust, since they unconditionally parted with title, especially when the suit is not prosecuted for the benefit of the purchasers.

SAME—BREACH OF CONTRACT OF CARRIAGE—ACTION FOR VALUE—DEFENSES—SALE OF GOODS BEFORE SUIT. The consignors of goods to be delivered to self or order cannot, after a sale of the goods *in transitu* and a transfer of all their title, maintain an action upon the contract of carriage for the failure of the carrier to make delivery, where the value of the goods enters into the element of the recovery, since it is essential to such action that the beneficial interest in the property remain in the consignors.

Appeal from a judgment of the superior court for King county, Albertson, J., entered January 3, 1905, upon findings in favor of the defendant, after a trial before the court without a jury, dismissing on the merits an action for a conversion. Affirmed.

*Walter S. Fulton,* for appellants. The consignors' privity of contract entitled them to maintain the action, and the carrier is estopped to allege ownership in a third party. 3 Ency. Plead. & Prac., 826; Angell, Carriers, § 500; *Young v. East Alabama R. Co.,* 80 Ala. 100; *Rosenfield v. Express Co.,* Fed. Cas. No. 12,060; 5 Am. & Eng. Ency. Law (2d ed.), 350; *Finn v. Western R. Corp.,* 112 Mass. 524, 17 Am. Rep. 128. An action of assumpsit lies when the shipper is bound to pay the freight. *Carter v. Graves,* 9 Yerg. (Tenn.) 446; *Northern Line Packet Co. v. Shearer,* 61 Ill. 263; *Stafford v. Walter,* 67 Ill. 83. In such case, the question of ownership is immaterial. *Chicago etc. R. Co. v. Shea,* 66 Ill. 471; *Cobb, Blasdel & Co. v. Illinois Cent. R. Co.,* 38 Iowa 601. The consignor is the trustee of an express trust. Bal. Code, § 4825; 3 Ency. Plead. & Prac., 828; *Hooper v. Chicago etc.*

*R. Co.,* 27 Wis. 81, 9 Am. Rep. 439; *Wolfe v. Missouri Pac. R. Co.,* 97 Mo. 473, 11 S. W. 49, 10 Am. St. 331, 3 L. R. A. 539. The above statute authorizes the action. *Southern Express Co. v. Craft,* 49 Miss. 480, 19 Am. Rep. 4; *Finn v. Western R. Corp., supra.* The transfer of the bill of lading did not affect the contract. Bal. Code, §3590; 4 Am. & Eng. Ency. Law (2d ed.), 553. A particular kind of delivery being called for, no title passed by the assignment of the bill of lading until the delivery was made. *McNeal v. Braun,* 53 N. J. L. 617, 23 Atl. 687, 26 Am. St. 441; *Allis v. Voigt,* 90 Mich. 125, 51 N. W. 190; *Taylor v. Cole,* 111 Mass. 363; *Jones & Co. v. Brewer,* 79 Ala. 545; *Perkins v. Eckert,* 55 Cal. 400; *Hooper v. Chicago etc. R. Co., supra;* *Braddock Glass Co. v. Irwin,* 153 Pa. St. 440, 25 Atl. 490; *Hanauer v. Bartels,* 2 Colo. 514; *Sneathen v. Grubbs,* 88 Pa. St. 147; *Gilman etc. v. Hill,* 36 N. H. 311; *Lawrence v. Burnham,* 4 Nev. 361, 97 Am. Dec. 540. Until delivery the property was at the risk of the consignor. *Dunlop v. Lambert,* 6 Clark & F. 619; *Calcutta Co. v. DeMattos,* 32 L. J. Q. B. 332. It was the duty of the carrier to make delivery as stipulated. 5 Am. & Eng. Ency. Law (2d ed.), 231,389; *Tarbell v. Royal Exchange Shipping Co.,* 110 N. Y. 170, 17 N. E. 721, 6 Am. St. 350; *Willis v. Steamship City of Austin,* 2 Fed. 412. Even if the consignees refused to receive it. 5 Am. & Eng. Ency. Law (2d ed.), 222; Hutchinson, Carriers, 358; *Green etc. Nav. Co. v. Marshall,* 48 Ind. 596; *Irzo v. Perkins,* 10 Fed. 779; *Scheu v. Benedict,* 116 N. Y. 510, 22 N. E. 1073, 15 Am. St. 426; *Steamboat Keystone v. Moies,* 28 Mo. 243, 75 Am. Dec. 123. The measure of the damages is the market value of the goods. 5 Am. & Eng. Ency. Law (2d ed.), 373; *Finn v. Western R. Corp., supra.* The burden was on the carrier to show that nondelivery was not due to its negligence. *Steele v. Townsend,* 37 Ala. 247, 79 Am. Dec. 1. Nondelivery is presumptive evidence of negligence. *Black v. Goodrich Transp. Co.,* 55 Wis. 319, 13 N. W. 244; *Steers v. Liverpool*

*etc. Steamship Co.,* 57 N. Y. 1, 15 Am. Rep. 453; *Magnin v. Dinsmore,* 56 N. Y. 168; *Kirst v. Milwaukee etc. R. Co.,* 46 Wis. 489, 1 N. W. 89; 5 Am. & Eng. Ency. Law (2d ed.), 379.

*W. H. Bogle,* for respondent. The title passed by the assignment of the bill of lading without a delivery of the goods. Benjamin, Sales (Bennett's ed.), § 697; Newmack, Sales, § 242; 24 Am. & Eng. Ency. Law (2d ed.), 1068; *Sohlman v. Mills & Cc.,* 3 Stroh. Law (S. C.) 384, 51 Am. Dec. 630; *Jones v. Davies,* 3 Houst. 68; *Pierce v. Chipman,* 8 Vt. 334; *Sigerson v. Harker,* 15 Mo. 101; *Goldstone v. Merchant's Ice & Cold Storage Co.,* 123 Cal. 625, 56 Pac. 776; *Carter v. Willard,* 19 Pick. 1; *St. Paul Roller-Mill Co. v. Great Western Despatch Co.,* 27 Fed. 434; Bal. Code, §§ 3598-3600. At common law the suit must be brought by the person having the right of property and possession. Benjamin, Sales, § 697; *Krulder v. Ellison,* 47 N. Y. 36, 7 Am. Rep. 402; *Blum v. The Caddo,* Fed. Cas. No. 1,573. Under the Code, it must be by the real party in interest. Pomeroy, Remedies, 128, 138; *First. Nat. Bank v. Young,* 20 Wash. 337, 55 Pac. 215. The assignee of the shipping contract could sue in his own name. *First Nat. Bank v. Northern Pac. R. Co.,* 28 Wash. 439, 68 Pac. 965; 3 Ency. Plead. & Prac., 836; *Shaw v. Railroad Co.,* 101 U. S. 557, 25 L. Ed. 892; Hutchinson, Carriers (2d ed.), § 139; 2 Daniel, Negotiable Inst. (4th ed.), 1745a; *Merchant's Bank v. Union R. & Transp. Co.,* 69 N. Y. 373; *Robinson etc. Co. v. Memphis etc. R. Co.,* 9 Fed. 129, 141; Jones, Pledges, § 242. The bailee's duty is to deliver to the owner, on production of the shipping receipt. *First Nat. Bank v. Northern Pac. R. Co., supra; Young v. Union Sav. Bank & Trust Co.,* 20 Wash. 360, 63 Pac. 247; *Harris v. Bradley,* Fed. Cas. No. 6,116. The right of possession was transferred with the receipt. *Goldstone v. Merchants' Ice & Cold Storage Co., supra; Durr v. Hervey,* 44 Ark. 301. Its delivery passed title to the goods. *Carter v. Willard, supra; Lanfear v. Sumner,* 17 Mass. 110, 9 Am.

Dec. 119. The assignor of a contract is not a trustee of an express trust. Bliss, Code Pleading, § 45; Pomeroy, Remedies, § 126. The bailee may always show that the bailor has parted with his interest in the bailment. *Nudd v. Montanye,* 38 Wis. 511; *While v. Phelps,* 14 Minn. 27, 100 Am. Dec. 190; 5 Cyc. 174; Pomeroy, Remedies, 128, 138. A carrier by water is relieved of liability for failure to deliver by waiting a reasonable time. 6 Cyc. 454, 455; *The Hattie Palmer,* 68 Fed. 380; *Clendaniel v. Tuckerman,* 17 Barb. 184.

FULLERTON, J.—The appellants, trading under the name of Arctic Trading Company, in September, 1902, shipped certain goods from Seattle, Washington, to Nome, Alaska, consigned to themselves or order, by the steamship "Garonne," then owned and operated by the respondent. The goods consisted of beer, vegetables, hay, and coal. The bill of lading specified that the goods were to be carried to "Nome anchorage," and there delivered to the appellants or order, "at ship's tackle." The harbor at Nome is an open roadstead, having no wharves or docks alongside which steamships of the size of the Garonne may land and discharge cargo, and vessels of that character are compelled to anchor from one and one-half to two miles from the shore, and discharge their cargoes on lighters. To deliver "at ship's tackle" was understood by the parties to mean a delivery over the ship's side to lighters furnished by the shipper or person authorized to receive the cargo.

The steamer arrived off Nome on October 9, 1902, and remained in the roadstead for seventeen days. During that time, she discharged all of her cargo carried under bills of lading which required delivery on shore, but delivered only about half of the goods consigned to the appellants, carrying the remainder back to the point of shipment on her return voyage. The appellants elected to treat the failure to deliver

the goods as a conversion, and brought this action to recover their value.

In answer to the complaint, the respondent interposed two principal defenses, the first being that, before the arrival of the goods at Nome, the appellants had sold the same, and were therefore not parties in interest, and could not prosecute an action to recover the value of the goods; and the second, that the failure to deliver the balance of the goods was caused in part by the bad weather and rough seas, and in part by the failure of the appellants' assignees to furnish sufficient lighterage facilities.

At the trial, it appeared from the evidence that, prior to the arrival of the goods at Nome, the appellants had sold the beer contained in the shipment to the Northwestern Commercial Company, and the balance of the goods to the North American Trading and Transportation Company, and that, on the arrival of the vessel, the agent of the appellants delivered to the respondent's agent the bill of lading for the goods and took from him two delivery orders, the one covering the beer, which he, as such agent, assigned in writing to the Northwestern Commercial Company, and the other, covering the balance of the goods, which he, in a like capacity, assigned in writing to the North American Trading and Transportation Company. Whether these sales were made upon credit or for cash does not appear from the evidence, but it does appear, that such of the goods as the respondent delivered were delivered to the holders of these assigned delivery orders. The trial court held that, inasmuch as the appellants had sold the goods *in transitu,* they had no interest in them at the time of the alleged conversion, and hence could not maintain an action to recover their value, and, without deciding the other questions presented by the record, entered judgment for the respondent.

The appellants make some contention as to the sufficiency of the evidence to justify the finding of the court to the effect that they had parted with their interest in the prop-

erty, but we think the evidence does not leave the question in doubt. The written assignments of the delivery orders were in form absolute, and the representatives of both the appellants and the purchasers testify to a completed sale. The appellants, however, argue that because the goods were shipped to be delivered at ship's tackle, and the written assignments called for delivery at that place, there could be no sale without such delivery. But, plainly, these words were used in the bill of lading, the delivery orders, and in the written assignments, to describe the place of delivery, not to annex a condition to the contract of sale. An acceptance of a consignment of goods from Seattle to Nome' would, unless it was otherwise expressly stipulated, require a common carrier to deliver the consignment at the usual landing place on the shore at Nome, and these words were evidently used in the several writings mentioned to stipulate a different place for delivering the goods than that which would be understood by an unconditional contract of carriage.

The appellants further contend that they are entitled to recover, notwithstanding they have parted with their interests in the property. In support of this contention, they argue, first, that the carrier, having received the goods from them and having failed to deliver them, is estopped to deny their title; second, that they are trustees of an express trust with relation to the property, and are entitled to maintain the action for the benefit of the *cestuis que trustent;* and third, that they have a common law action for the breach of contract of carriage.

The first contention presents a question on which there is some contrariety of decision. It was early held that a bailee must account to his bailor for the property entrusted to his care, even where it had been taken from him by legal proceedings instituted by the true owner, but the injustice of this rule was so keenly felt that it was early discarded, and now it is everywhere held that, when the true owner

has, by legal proceedings, compelled a delivery to himself of the goods bailed, such delivery is a complete justification for nondelivery according to the directions of the bailor. It is held, also, by the weight of authority, that, when the bailee has delivered the property to the true owner having a present right of possession, on his demand, such delivery is a complete defense to any action of the bailor looking to the recovery of the property or its value. And in these respects, there is no difference between a common carrier and other bailees. *Wells v. American Express Co.*, 55 Wis. 23, 11 N. W. 537, 12 N. W. 441, 42 Am. Rep. 696; *The Idaho*, 93 U. S. 575; 6 Cyc. 471.

But in this case, the respondent did not deliver the goods sued for to any one, and the question is, can the consignors maintain an action for their value, after they have sold and assigned to a third person all their title and interest in the property. While there is, as we say, some contrariety of decision on this question, it seems to us that the better reason is that they cannot, especially under circumstances such as are shown here. The consignors not only parted with their interests in the property after making the shipment, but they assigned and delivered their evidences of title, and directed that the goods be delivered to the persons to whom they had made the assignment, and more than this, such persons demanded and received a part of the goods. The assignment of the delivery orders was, of itself, sufficient to pass title in the goods to the assignees of such orders, and gave them a right of action against the respondent for the recovery of the goods, if delivery to them should be refused on proper demand. *First Nat. Bank v. Young*, 20 Wash. 337, 55 Pac. 215; *First Nat. Bank v. Northern Pac. R. Co.*, 28 Wash. 439, 68 Pac. 965.

This being true, it is apparent that, if the appellants' contention can be maintained, the carrier can be lawfully compelled to account to more than one claimant of the property. It can be compelled to account to the consignors, be-

cause it cannot dispute the consignors' title; and it can be compelled to account to the consignors' assignees, because they are the owners of the consigned property and are entitled to have it delivered to them. Manifestly, such a rule is unjust and ought not to be recognized, unless some principle of public policy requires it. It may be that such policy requires that a carrier should not be permitted to dispute its consignor's original title when it has not been compelled to deliver to a third person, and no demand for delivery has been made upon it by such third person, but we cannot conceive that public policy requires that the carrier should be estopped from showing, as a defense to an action for a conversion of the goods, that the consignor had parted with his title since making the consignment. Such a rule, instead of conserving a principle of public policy, would have a contrary effect; it would encourage fraud and perjury. But we do not need to go to this extent in the case before us. Here there was not only demand on the carrier by the assignees for the property, but an actual receipt by them of a part of the consignment, and so far as it appears, they are still claiming the property.

The other contentions seem to us to merit no special consideration. Since the appellants have parted unconditionally with their interests in the property, they cannot be trustees of an express trust with relation thereto. Moreover, they are suing in their own right, claiming an independent right to recover, and not for the use and benefit of their assignees.

Nor can the appellants maintain this action as for breach of contract. While at common law an action could be maintained against a carrier, either in assumpsit for a breach of the contract of carriage, or in trover or case for a conversion of the goods, yet, to maintain either of such actions where the value of the consigned goods entered into it as an element of recovery, it was essential that the beneficial interest in the property remained in the consignor. Any

act of the consignor which would defeat a recovery for the value of the goods in one form of action would defeat recovery in the other. So that, if this distinction is still available to the appellants under our system of pleading, it cannot aid them here, because the value of the goods is the sole object of recovery, and this, as we have shown, is defeated by the sale made subsequent to the consignment of the goods for shipment.

We conclude, therefore, that the appellants cannot maintain the action, and that the trial court correctly so decided. The judgment is affirmed.

MOUNT, C. J., RUDKIN, CROW, and ROOT, JJ., concur.