[No. 26765. Department One. December 27, 1937.]

HERBERT S. FINDLEY et al., *Appellants*, v. IDA L. FIND-
LEY, *as Administratrix, et al., Respondents,*
RICHARD K. FINDLEY, *Appellant.*[1]

O. C. Moore, R. P. Woodworth, and D. V. Morthland,
for appellants.

Lee C. Delle (M. C. Delle, of counsel), for respond-
ent and cross-appellant Ida L. Findley.

[1]Reported in 74 P. (2d) 490.

SIMPSON, J.—This suit was instituted by plaintiffs on March 15, 1935, to set aside a deed of conveyance made by them to defendant Ida L. Findley, in her capacity as administratrix of the estate of Clarence S. Findley, deceased. They also sought to have set aside an agreement concerning the disposition of certain real estate and personal property, which agreement was signed by themselves, Ida L. Findley, and William J. Findley, all upon the ground of fraud and collusion practiced upon them by their own attorneys, defendants, and defendants' attorneys. Intervener Richard K. Findley joined with plaintiffs in asking that the deed and contract be set aside.

Plaintiffs, husband and wife, allege that, on the 18th day of August, 1932, they signed a deed conveying to Ida L. Findley, as administratrix of the estate of her deceased husband, Clarence S. Findley, certain real estate in the city of Yakima, described as lot 4, block 11 of North Yakima, and that also on the same day and at the same place they entered into a contract with defendants Ida L. Findley and William J. Findley, by the terms of which all of the property belonging to the Clarence S. Findley estate was distributed between Herbert S. Findley, Ida L. Findley, and William J. Findley. Further, they allege that, in the transactions just referred to, they were represented by Cherry & Hull, attorneys of Yakima, and that Cherry & Hull were in collusion with defendants and defendants' attorneys in securing plaintiffs' signature to the deed and contract, and that, because of such collusion, plaintiffs were deprived of their just and legal rights and of the properties purported to be relinquished and conveyed by them.

Plaintiff Herbert S. Findley alleged that, prior to and at the time he signed the deed and entered into the contract, he was suffering from chronic melan-

cholia to such an extent that his mentality, will power, and power of resistance were greatly impaired and reduced, so that he was not at that time capable of understanding and intelligently consummating business and legal transactions; and on that account was incapable of resisting the repeated requests and demands of defendants, their attorneys, and those of Cherry & Hull, that he sign the deed and contract in question. It was further alleged that no consideration was received by plaintiffs for the execution of the contract and deed, and therefore they asked to have both annulled and set aside.

Intervener, Richard K. Findley, made allegations to the same effect as those made by plaintiffs.

Defendants answered and denied all of the allegations of fraud and collusion. Then, by way of trial amendment, they alleged that Herbert Findley had, on the 8th day of September, 1932, deeded to his wife Anna the real property in controversy.

The court, after hearing the evidence, found that there was no fraud or collusion on the part of the parties involved and refused to set aside the deed, but did set aside the contract for the reason that it was not signed by Richard K. Findley, one of the heirs of Clarence S. Findley.

From that judgment, plaintiffs and intervener have appealed, contending that the court erred in omitting and failing by its decree to award to plaintiffs and the intervener the full relief demanded by the prayers of their respective complaints, and in permitting the introduction of testimony intended to establish that a certain deed of real estate executed on May 12, 1931, from Clarence S. Findley to Herbert S. Findley and wife was, in fact, a conveyance in trust.

Respondent Ida L. Findley cross-appealed from the judgment awarding plaintiff any relief and also from

an order of the court denying defendants' motion to dismiss the action because of the fact that Herbert S. Findley had deeded the real estate in question to his wife Anna.

For convenience, we refer to the parties by their first names.

We have read the record and summarize only that part necessary to a decision, as follows: Just prior to May, 1931, Clarence S. Findley, a widower, lived in the city of Yakima, where he owned certain personal property consisting of bonds, household goods, and an automobile; also lot 4, block 11 of North Yakima, upon which there was a building that was rented for business purposes. He had a brother Herbert, living at Cheney, a brother William, living in California, and a half-brother Richard, who lived in Texas. Clarence was very friendly with his brother Herbert. He visited with him, corresponded with him, and had a joint safe deposit box in the Yakima First National Bank of Yakima, to which each had a key.

About May 12, 1931, Clarence went to the office of A. C. Cherry, an attorney of Yakima, and asked him to prepare a deed conveying to Herbert the real estate situated in Yakima, telling the attorney that he, Clarence, was about to get married; that he was afraid the lady to whom he was to be married might be one of those who desired to marry him for his property; and that he wanted to make out the deed and leave it in the safe deposit box, so that, if any trouble arose between himself and his future wife, the deed could be delivered to Herbert. The deed was accordingly drawn, and attorney Cherry delivered it to Clarence. Herbert secured this deed and placed it on record, appellants claiming that it was delivered to them by Clarence, and respondents contending that Herbert

took it from the safe deposit box without the knowledge or consent of Clarence.

On May 14, 1931, Clarence was married to Ida L. Taylor, each of them at that time being approximately sixty years of age. They lived together as husband and wife until July 16, 1931, when Clarence went to Seattle, stayed for a while, returned on July 28, 1931, but left again for a trip into the mountains with his brother Herbert. He did not return for some time, and on November 21, 1931, his wife Ida secured an interlocutory decree of divorce, which was never made final for the reason that they became reconciled shortly after Christmas in 1931. Clarence died on March 10, 1932, and his widow Ida was appointed administratrix of the estate two days thereafter.

A few days prior to his death, Clarence talked with attorney Cherry, saying that, if anything happened to him, Clarence, that Cherry should telephone to his brother Herbert at Cheney. Acting upon these instructions, Mr. Cherry did telephone to Cheney immediately after hearing of the death of Clarence, and was advised that Herbert was already on his way to Yakima. Mr. Cherry waited for Herbert, meeting him at the railway depot at approximately two o'clock on the morning of March 11th. They then went to Mr. Cherry's office and talked over the situation until morning. Early in the morning, Miss Hull, partner of Mr. Cherry, arrived, and they prepared a petition for the appointment of Herbert as executor of his brother's· will. The will was never found, so the petition was not filed.

Miss Hull and Herbert then went to the bank and got certain papers from the safe deposit box, which had been rented jointly by Clarence and Herbert. Herbert contended that there was nothing in this box other than some bonds, while Miss Hull and Mr.

Cherry both testified that there was in the safe deposit box a deed from Herbert and his wife Anna to Clarence, conveying to Clarence the real property in Yakima referred to in the complaint. The next day, Herbert returned to Cheney and then made a trip to Spokane. Upon Herbert's return to Yakima with his wife, they met Herbert's brother William, who had arrived from California.

After the funeral of Clarence, the two brothers, Herbert's wife Anna, Cherry & Hull, and attorneys representing Ida L. Findley had many consultations relative to the disposition of the estate left by Clarence, and, as a result of these various conferences, the deed and contract in controversy here were signed and acknowledged.

The contention of Herbert that his mind was in such condition that he could not understand the business transactions in which he engaged is not borne out by the testimony of himself and his witnesses. His family doctor testified that, while Herbert was ill and suffered from melancholia, he did have the capacity to understand the making of a deed. Between the time of the death of his brother and the signing of the deed and contract when Herbert made the trip to Spokane, he consulted an attorney there about these transactions, and at another time went in company with Mr. Cherry to see another lawyer in Yakima about the same matter. He was able to remember dates and relate conversations and, in fact, acted and talked as any man would under similar circumstances.

There was no evidence of any nature that went to prove collusion on the part of respondents, their attorneys, and those representing appellants during the negotiations leading up to the signing of the deed and contract. On the contrary, all of the testimony, including that of appellants themselves, showed that

Cherry & Hull, in representing appellants, acted fairly and honestly, and for the best interests of their clients. No advantage was sought or taken by respondents or their attorneys.

Fraud must be proven by evidence that is clear, cogent, and convincing. The evidence adduced in this case did not in any way measure up to such rule.

■ By reason of the execution of the deed of September 8, 1932, by Herbert to his wife, Herbert thereby divested himself of any right, title, or interest he had in the real property, and it became and remained the separate property of Anna. Rem. Rev. Stat., § 10572 [P. C. § 1443]. *Lanigan v. Miles,* 102 Wash. 82, 172 Pac. 894; *Chapman v. Edwards,* 113 Wash. 224, 193 Pac. 712; *Dart v. McDonald,* 114 Wash. 448, 195 Pac. 253.

With this fact before us, we find that Herbert was not in a position to claim a defective mental condition or charge fraud and collusion on the part of anyone.

A deed obtained through fraud is voidable only at the instance of the grantor. *Davis v. Robedeaux,* 97 Okla. 86, 222 Pac. 990; 2 R. C. L. 610; 4 A. L. R. 9.

Herbert, having parted with the title to the property, was not the real party in interest and could not maintain the action, in view of the provisions of Rem. Rev. Stat., § 179 [P. C. § 8255]. "Every action shall be prosecuted in the name of the real party in interest." *Sweeney v. Waterhouse & Co.,* 39 Wash. 507, 81 Pac. 1005.

■ The contract, among other things, provided:

"Now THEREFORE, in consideration of the premises . . . the said parties hereby grant, covenant and agree to and with each other as follows:

"1. That the certain real estate situated in the City and County of Yakima, State of Washington, to-wit: [Property here described] shall be deemed and held

to be the property of the estate of the said Clarence S. Findley, deceased, and that said parties of the first part, to-wit: Herbert S. Findley and Anna E. Findley . . . will concurrently herewith, duly execute, acknowledge and deliver unto the said Ida L. Findley, in her capacity as administratrix . . . a good and sufficient special warranty or bargain and sale deed conveying said lands and premises unto Ida L. Findley, in her capacity as administratrix. . . ."

Provision was made for dividing among the signers all the property owned by Clarence before his death, and certain questions concerning ownership of bonds found in the safe deposit box and cash in the joint account of Herbert and Clarence were settled by the provisions of the contract. It also provided for the dividing of a certain part of these bonds between Herbert, William, and Ida, the selling of others, and the division of the proceeds among the three signers to the contract. A further provision in the contract was to the effect that distribution, division, and settlement of the estate should be made regardless of any will or testamentary disposition whatsoever of Clarence.

Richard was not present when this contract was made and did not sign it, nor did he know anything of its contents until after this action was instituted. His existence was not even disclosed to the attorneys who drew the contract. Clearly, it was void, in that it attempted to take from Richard whatever interest he had in his brother's estate.

In *Hunter v. Jordan,* 158 Wash. 539, 291 Pac. 471, we held void a contract to suppress a will where it was not signed by all of the parties interested. In that case we said:

"Where the agreement to suppress a will is by less than all of the persons interested, the courts seem to be practically unanimous in holding the agreement void, against public policy as tending to thwart justice and

as a fraud upon the beneficiaries excluded from the agreement."

That rule is applicable in this case, where two heirs, by contract entered into between themselves, sought to take unlawfully property belonging to another heir.

Appellants earnestly contend that this instrument, by virtue of the things stipulated therein, constituted by its terms the consideration and inducement not only for its own execution, but also for the execution of the deed for which provision is made; and that, when the contract was held void, it necessarily destroyed the consideration for the giving of the deed. Assuming without deciding this to be the rule, it does not afford relief to appellants.

There is in the record ample evidence proving that appellants did not own the property in question at the time the contract was signed.

Mr. Cherry testified that, during the summer of 1931, Clarence had exhibited to him a quitclaim deed from Herbert and Anna Findley to himself, the deed being to the real property in controversy here. Clarence had explained to him that Herbert had secured the deed, executed by himself to Herbert and wife, dated May 12, 1931, from the safe deposit box and put it upon record without the consent of Clarence, and that thereafter Herbert and Anna had deeded the property back to him.

Miss Hull and Mr. Cherry both testified that, when the safe deposit box was opened on the day after Clarence's death, there was in the box this same deed from Herbert and Anna to Clarence. They both saw it and were able to identify it. They further testified that, at that time, Herbert threatened to destroy the deed so that the estate would not have to be probated and that he would keep the property. This quitclaim deed was

not presented to the court; whether it was lost or destroyed, has not been disclosed.

It makes no particular difference whether the signing of the contract was the consideration for the signing of the deed or not. Herbert and Anna did not own the property. They had made the deed to Clarence, and the deed had been delivered to him. All that they were doing by signing the deed of March 18, 1932, was simply clearing the record by deeding to Clarence's estate the same property that they had re-conveyed to him during his lifetime.

With our disposition of this case, it is unnecessary to consider the question of whether or not a trust was created by the deed from Clarence to Herbert and Anna, dated May 12, 1931. We cannot grant relief on the cross-appeal of Ida L. Findley. Even though Herbert had lost his interest in the realty by virtue of his deed to his wife, it remains that he has an interest in the personal property, while Richard and William have an interest in all of the estate and are entitled to have it probated and to then receive their proper share of the property.

We conclude that the judgment of the trial court was correct, and it is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and GERAGHTY, JJ., concur.