[No. 6031. Decided July 28, 1906.]

I. H. JENNINGS, *Receiver etc., Appellant,* v. DEXTER HORTON & COMPANY, *Respondent.*[1]

VENDOR AND PURCHASER—CONTRACT—REPAYMENT ON FAILURE OF TITLE—DEFAULT IN PAYMENT. The vendee of land is not entitled to repayment of the sums paid where he makes default in payments prior to the determination of a suit involving the title, when the contract for the sale, in which time is of the essence, was subject to such suit and provided for forfeiture of sums paid as liquidated damages on default in paying installments, and for repayment in case of failure of title, and where the vendor had, after default, served notice of forfeiture.

SAME—CONSIDERATION. Such a contract is not unilateral or without consideration, where at the time it was made a court of competent jurisdiction had sustained the title, from which judgment an appeal was pending; since the vendor's agreement to sell, and the surrender of its rights to sell to another, constitute two considerations for the vendee's agreement to purchase.

1Reported in 86 Pac. 576.

Appeal from a judgment of the superior court for King county, Albertson, J., entered November 4, 1905, in favor of the defendant, upon an agreed statement of facts, in an action to recover payments made on a contract for the sale of land. Affirmed.

*Allen, Allen & Stratton,* for appellant.

*George E. de Steiguer,* for respondent.

HADLEY, J.—This is an action for the recovery of money, brought by the receiver of the Colby Trading Company, an insolvent corporation. Among the effects of said corporation, which passed into the possession of the receiver, was a certain written contract between Dexter Horton & Company and the said corporation. The contract bore date January 2, 1903, and provided that Dexter Horton & Company agreed to sell and convey to said corporation certain real estate, upon the terms and conditions therein provided. The total purchase price specified was $3,740, and $2,000 thereof was paid at the time the contract was executed. The balance was made payable in successive monthly installments of specified amounts, and it was provided that upon the faithful performance on the part of said corporation of all the terms of the contract, a good and sufficient conveyance of the land, containing covenants of special warranty, should be made to it by Dexter Horton & Company. Time was made of the essence of the contract, and it was recited that, if the corporation should fail to make any payments as specified and at the times stated, then all rights of said corporation, either at law or in equity, under the contract should be wholly terminated, and at an end; and, also, that all payments theretofore made should be retained by Dexter Horton & Company, as and for liquidated damages. The contract also contained the following:

"Provided, however, that this agreement is made subject to the final determination of the cause now pending in the United States circuit court of appeals for the ninth circuit,

wherein the London and San Francisco Bank is plaintiff, and Dexter Horton & Co., the party of the first part hereto, is defendant; which said action involves the title to the lands above described. And it is further provided that if the final judgment in said cause shall be in favor of the plaintiff therein, and adverse to the party of the first part hereto, and shall be to the effect that the said London and San Francisco Bank or Arthur Scrivener as trustee, or its or his assigns, has any right, title, claim, interest or lien in and to said premises, or any part thereof, superior to the title and right of the party of the first part therein, thereupon all rights of either of the parties hereto under this contract shall cease and the party of the first part shall be under no obligation to make any conveyance as above provided, nor shall the party of the second part be under any obligation to make further payments thereon, but the party of the first part shall repay to the party of the second part all payments theretofore made without interest."

The installment payments due upon the contract in the months of February, March and April, 1903, were duly paid, and these, together with the $2,000 cash paid when the contract was executed, made the total sum of the payments $2,550. The suit mentioned in the above quoted portion of the contract, which was pending in the United States circuit court of appeals at the time the agreement was made, was thereafter, on or about the 19th day of October, 1903, decided adversely to Dexter Horton & Company, and to the effect that the London & San Francisco Bank, or Arthur Scrivener as its trustee, had a valid mortgage upon the land covered by the contract, which was a lien thereon at the time the contract was made and at all times thereafter, the same being superior and paramount to the title of Dexter Horton & Company. After the decision in said cause by the United States circuit court of appeals, Dexter Horton & Company applied to the supreme court of the United States for a writ of certiorari to the said circuit court of appeals, for the review of said cause. The application was denied. There has been no appeal, and the decision remains unreversed and unmodified.

Prior to said decision the Colby Trading Company was in default as to the payments due from it under its said contract. Installments of $250 each were due on the second days of May, June and July, 1903, respectively. No one of said installments having been paid, Dexter Horton & Company, on the 31st day of July, 1903, served written notice upon said corporation that by reason of the default, all rights of the Colby Trading Company, either at law or in equity, arising from said contract, were declared at an end. A similar notice was also served upon the receiver of the corporation after his appointment and qualification. The aforesaid decision and judgment of the circuit court of appeals ordered the circuit court of the United States for the northern division of the district of Washington to enter judgment of foreclosure as to the premises described in the aforesaid contract, but the said circuit court has not entered such judgment. No such judgment having been entered, the parties to said cause, on or about the 12th day of September, 1904, stipulated that the decree that should be entered therein should recite that the aforesaid lands were excepted, released, and discharged from the lien of said mortgage. Thereafter, on the 13th day of September, 1904, the said London & San Francisco Bank, by deed, conveyed said lands to Dexter Horton & Company, free and clear of said mortgage. This action was brought by the receiver as aforesaid against Dexter Horton & Company to recover the $2,550 paid upon said contract, and the above facts, which we have gathered from the pleadings, are, by stipulation of the parties, the facts in the case.

The cause was submitted to the court without a jury, upon the pleadings as the agreed statement of facts, which the court accepted as its findings of facts. Conclusions of law from such facts were entered to the effect that the plaintiff is not entitled to the return of any of the money paid by said insolvent corporation on the contract set forth in the complaint, and that the action should be dismissed. Judg-

ment of dismissal was accordingly entered, and the plaintiff has appealed.

It appears that, prior to the time the contract between the parties was made, the United States circuit court had decreed that the lands about which they contracted were not subject to the lien of a certain mortgage. That decree was, however, subject to reversal on the appeal heretofore mentioned. The agreement provided that, if the final judgment should be adverse to this respondent, thereupon all rights and obligations of the parties to the agreement should cease, and respondent should repay the amount of payments theretofore made. Appellant contends that the decree of the circuit court of appeals was the final determination of the cause, while respondent insists that there could not be a final determination until final judgment was entered by the circuit court, which was, in fact, never entered adversely to respondent as we have seen from the statement of facts. From the view we take of the case, it is not necessary to pass upon the contention as to what was the actual final judgment within the meaning of the contract. We may, for the purposes of this opinion, assume that appellant is correct in the contention that the decision of the appellate tribunal was the final determination of the cause. Starting with that assumption, we will examine appellant's further contention that, by the determination in the appellate court, the condition in the contract was determined in favor of appellant here, and that the obligation of this respondent to return the money it had received became absolute without regard to whether appellant had paid all installments theretofore due under the contract or not. It will be remembered that several payments were in default long before the decision of the appellate court. Time was made of the essence of the contract, and it was also specifically provided that, if default should be made in any of the payments, all rights of appellant under the contract should be wholly at an end, and that respondent should re-

20—43 WASH.

tain all payments theretofore made as liquidated damages. The contract contained two provisions, by either one of which the rights of the parties thereunder might ultimately become fixed and determined. One of the provisions was that a final judgment in the foreclosure suit should fix and determine the respective rights, and the other was that a default in payment by the vendee should have the same effect. These two provisions must be construed together. Respondent well argues that it could not have been intended that the contract might be terminated twice, but rather that in whichever manner it should be terminated, the rights of the parties should be fixed thereby, and that should end the matter, so that the contract could not then be revived for the purpose of being terminated in a different manner. If a final judgment adverse to respondent had been entered before default by appellant, then the first provision above named would have terminated the contract, and appellant would have been under no obligation to make further payments, and could have recovered those already made. Again, when appellant made default and a forfeiture was declared, then by the terms of the contract it was terminated. The subsequent final judgment adverse to respondent did not revive and render operative the contract which had already been terminated and rendered inoperative. The termination of the contract concluded all of appellant's rights thereunder, including any right to the return of the money, which appellant had agreed should be retained by respondent as liquidated damages in the event of default in payments. By this action appellant seeks to rescind the contract. If the final judgment in the other causes had been in favor of respondent, the appellant could not have enforced specific performance or recovered the installments paid. It had long before forfeited its rights and had lost its interest in the result of the litigation. A party so in default will not be allowed to rescind a contract. *Reddish v. Smith,* 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781; *Aikman v. Sanborn* (Cal.), 52 Pac. 729; *Eames v.*

*Der Germania Turn Verein,* 8 Ill. App. 663. We think appellant is not, under any theory, entitled to retain the money unless the unmistakable language of the contract should be ignored and a new one made by the court.

Appellant's next point is that the contract was *nudum pactum.* It interpreted the contract to mean simply that respondent promised to convey if a certain mortgage was not a lien on the land. The contract involved more than that. A court of competent jurisdiction had declared that the mortgage was not a lien, and an appeal had been taken. The contract was therefore not made with reference to an existing fact, but with reference to a future judgment to be rendered on the appeal. The nature of that judgment was then a matter of uncertainty. The fact that the contract contained a condition dependent upon the uncertain event did not make it *nudum pactum.* There were two considerations for the payments and promises of appellant. One was the agreement of respondent to sell and convey the property subject to certain conditions; the other was the surrender by respondent of its right to contract with or sell to another. These were in a legal sense an advantage to appellant and constituted a consideration for his payments and promises. The following comprehensive statement of what is sufficient to constitute a consideration for a promise shows that there was such in this case:

"It may be laid down as a general rule, in accordance with the definition given above, that there is a sufficient consideration for a promise if there is any benefit to the promisor or any loss or detriment to the promisee. It is not necessary that a benefit should accrue to the person making the promise; it is sufficient that something valuable flows from the person to whom it is made, or that he suffers some prejudice or inconvenience, and that the promise is the inducement to the transaction. And in the matter of a benefit, a mere expectation or hope, or a contingent benefit is sufficient; as, for example, the expectation of advantage or profit from the thing promised. Indeed there is a consideration if the promisee, in return

for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not." 9 Cyc. 311-313.

In *Gulton v. Marcus,* 165 Mass. 335, 43 N. E. 125, the promise was to return certain notes to the extent of $13,000 if the promisor found certain property to be worth the sum mentioned as its value. On failure to surrender the notes, it was sought to rescind the transaction; but the court said:

"But when a man acts in consideration of a conditional promise, if he gets the promise he gets all that he is entitled to by his act, and if, as events turn out, the condition is not satisfied and the promise calls for no performance, there is no failure of consideration."

The condition in the contract in question was not one which was under respondent's control, leaving it to perform merely at its own election. In such a case the conditional promise does not make the contract unilateral. *Michigan Stone etc. Co. v. Harris,* 81 Fed. 928.

We therefore think the court did not err, and the judgment is affirmed.

MOUNT, C. J., DUNBAR, CROW, and FULLERTON, JJ., concur.