[No. 11798.  Department One.  August 11, 1914.]

MARY S. GIBSON, *Respondent*, v. JAMES W. ROUSE *et al.*,
                    *Appellants.*[1]

VENDOR AND PURCHASER—CONTRACT—FORFEITURE—DEFAULT IN
PAYMENT—WAIVER.  Where contracts for the sale of property de-
clared the time of payment of their essence, and provided that the
vendors might declare the contracts forfeited and retain payments
made, upon failure of the purchaser to make deferred payments
promptly, conversations on the part of one of the vendors leading
the purchaser to believe that prompt payment of balances due would
not be insisted upon, and the execution of mortgages upon the prop-
erty not falling due until long after maturity of the deferred pay-
ments, constitutes a waiver of the vendors' right to a forfeiture with-
out notice and tender of performance.

SAME—FORFEITURE—TENDER OF DEED—NECESSITY.  In such case,
the vendors, having waived the provision making time of payment
the essence of the contracts, cannot thereafter claim a forfeiture
and put the vendee in default without first tendering a deed and
demanding payment of the purchase price.

SAME—NOTICE OF FORFEITURE—EVIDENCE—SUFFICIENCY.  Whether
the vendors ever gave notice of an intention to forfeit the contracts
after waiver of the provision making time of payment the essence
thereof, is not sufficiently shown by their testimony that they wrote
letters to the vendee demanding payment and notifying her that, in
default thereof, the contracts would be forfeited, the vendee having
denied receipt of the letters.

SAME—FORFEITURE—TENDER OF CONVEYANCE—INABILITY TO CON-
VEY TITLE.  Where vendors waived provisions in contracts for the
sale of land declaring time the essence thereof, but made no tender
of a deed and were not in position to convey a clear title, owing to
their execution of mortgages on the land pending maturity of the
contracts, they cannot put the vendee in default, while the mort-
gages remain unpaid, by demanding payment and threatening for-
feiture of the contracts.

SAME—RESCISSION BY VENDEE—TENDER—NECESSITY—RECOVERY OF
PAYMENTS.  Vendors in contracts of sale, who withdrew the con-
tracts from escrow without right, and while they were in no posi-
tion to have performed the contracts themselves, cannot complain

[1]Reported in 142 Pac. 464.

that the vendee accepted such acts as a rescission on their part and claimed a right to a return of the money paid; and the vendee is not bound to a tender of performance on his part.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered February 11, 1913, upon findings in favor of the plaintiff, in consolidated actions for rescission, tried to the court. Affirmed.

*Zent, Powell & Redfield* and *Nuzum, Clark & Nuzum*, for appellants.

*Sampson & Heil*, for respondent.

Ellis, J.—The plaintiff brought separate actions to rescind two real estate contracts, and to recover the money which she had paid thereon. The actions were consolidated and tried together. The following facts were admitted: On May 1, 1910, the plaintiff entered into a contract with the defendants whereby she agreed to purchase from them certain property, in Rouse addition to Spokane, for $1,000. She paid $800 down, leaving a balance of $200 to be paid, $100 on or before May 6, 1911, and $100 on or before May 6, 1912. On July 1, 1910, she entered into a similar contract with the defendants for the purchase of property in Roosevelt addition to Spokane. The contract price was $2,000. She paid $1,900 down, leaving a balance of $100 to be paid on or before July 1, 1911. Both contracts provided that the deferred payments should bear interest at eight per cent per annum from date. Each contract declared the time of payment of its essence, and provided, in substance, that if the purchaser should fail to make payments punctually as therein specified, the seller might, at his option, declare the contract null and void, and the purchase money already paid should be forfeited by the purchaser in lieu of rent. Both contracts were placed in escrow in the Old National Bank of Spokane. The plaintiff failed to meet the deferred payments, and, on September 20, 1911, defendants, claiming the contracts void, withdrew them from escrow. All of the property in question was vacant and unimproved.

For convenience, we shall designate the contracts, respectively, the small and the large contract.

After the execution of these contracts, and before they were withdrawn from escrow, the defendants placed three mortgages upon the properties covered by the contracts, two of them before any of the deferred payments became due, and one a short time after the maturity of the deferred payment on the large contract. At the beginning of the trial, the defendants offered to convey the properties to the plaintiff if she would pay the balances due and the assessments and expenditures for improvements which the defendants had made upon the properties. This offer was refused.

Touching other matters, the evidence was in sharp conflict. The plaintiff and her two daughters, who assisted her in business matters, testified that none of them were ever requested to make any additional payments upon any of these properties, and never at any time received any letter or notice of any kind so requesting. The plaintiff and one of these daughters testified that the defendants, in February, 1911, verbally agreed to allow her an indefinite extension of time, even discouraging any effort on her part to complete the payments. The other daughter testified that, about two weeks later, the defendant Rouse, in effect, repeated this promise to her, stating that he was endeavoring to make a sale or exchange of these properties for a residence for the plaintiff. All three testified, in substance, that on several occasions the plaintiff had expressed to the defendant a desire to sell these lots and buy a home, or to exchange these lots for a residence, and that the defendant Rouse promised to do everything in his power to consummate such a sale or trade; that the defendant at all times professed great friendship for the plaintiff, in whom he inspired absolute confidence, and that she relied upon him to attend to her business and make investments for her. In November, 1911, the plaintiff paid the taxes on the property covered by the large contract for the year 1910, and also certain assessments. She and her daughter testified

that they first learned that the contracts had been removed from escrow when, in 1912, her daughter sought to pay the taxes for the year 1911, and was informed that the defendants had already paid them. The plaintiff testified positively that she never had any notice whatsoever, either verbal or written, of the defendants' intention to forfeit the contracts or to withdraw them from escrow.

The plaintiff's attorney testified that, about May, 1912, he went to the office of the defendants and tendered to them the amounts still due upon the properties, which tender the defendant Rouse refused to accept. He claimed that the plaintiff had given him the money with which to make this tender. His testimony in that regard was very much weakened by the entries upon his own books, which indicated that, at that time, the plaintiff had given him only $116, which was about the amount necessary to pay the balance due upon the large contract. The plaintiff testified that she was present at this interview, and that the appellant Rouse did not offer to convey the land if she would pay the balances due, but put his hands upon his desk, and said "nothing doing." Her attorney testified positively that, at another time, he asked the defendant Rouse whether he would accept the money due on the contracts, and that Rouse said he would not.

The defendants' evidence was to the effect that they had repeatedly called upon the plaintiff to complete the payments; that they had written her letters, asking for payment, and that on one occasion, in response to a letter from the plaintiff, George Rouse, a son of the defendants, went to her home, and tendered to her deeds for the lots, demanding payment at that time; that she then said she was not ready to receive the deeds, and showed a disinclination to carry out her contract. This, however, was some time in October, 1910, and before any payment had become due upon either contract. The defendant Rouse himself testified that he was always able to deliver the deeds for the property, and that in July, 1911, the plaintiff came to his office and told him that she had no

money, and that she could not do anything with the lots; that he then told her that he had the deeds ready at any time she wanted to take them, and that two or three weeks later, he withdrew the contracts from escrow. Touching the tender, he testified that plaintiff and her attorney came to his office and told him that they had the money to pay down, but that they did not show it. His own testimony, however, indicates that he declined to accept payment on the large contract unless payment was also made upon the small contract. He testified that he mailed notice of cancellation of the contracts to the plaintiff, and later met one of her daughters on the street and told her about it. The court entered a decree rescinding the contracts, and awarding the plaintiff $3,014.68, and her costs. The defendants appealed.

The appellants contend that the decree should be reversed for two reasons: First, that the contracts were rightfully forfeited by the appellants; second, that, even conceding that there was no legal forfeiture, still the respondent was not entitled to a rescission and a recovery of her payments because she was herself in default and the appellants were not.

I. Was there a legal declaration of forfeiture? The court made no formal findings of fact; but, in the oral announcement of his decision, he plainly stated his views on the evidence. He was clearly of the opinion that Mr. Rouse, in his conversation with the respondent and her daughters in February and at other times, touching the exchange of this property for other property, led the respondent to believe that it would not be necessary for her to pay the balances promptly and that he would not insist upon the payments being made at the times mentioned in the contract.

A careful consideration of the appellants' abstract of record, fortified by frequent references to the statement of facts, convinces us that this view is supported by a clear preponderance of the evidence. The respondent and both of her daughters so testified, and though the appellants and their son testify to the contrary, the respondent's testimony is corrobo-

rated by circumstances wholly inconsistent with an insistence upon immediate or even early payment. On June 20, 1911, ten days before the final payment on the large contract became due, the appellants executed a mortgage upon the east fifty feet of the property covered by that contract, securing a loan for $600, payable by its terms one year from that date. On July 31, 1911, thirty days after the same final payment became due, but almost two months before any act of forfeiture, they executed a mortgage on the west fifty feet of the property covered by the large contract, securing a loan of $350, payable by its terms two years from that date. On February 10, 1911, almost three months before the first of the two deferred payments on the small contract became due, they executed a mortgage upon the property covered by that contract, securing a loan of $400, payable by its terms one year from that date. It is true, the appellant Rouse testified that it was understood with the mortgagees that he might pay off these mortgages at any time, but he testified to no definite contract to that effect, and the mortgages themselves negative any enforceable agreement of that kind. The trial court would have been justified in finding, and we do find, that the appellants themselves ceased to treat time as of the essence of the contracts, and orally waived their strict contractual right to a forfeiture without notice and tender of performance. Such a waiver may rest in parol. *Whiting v. Doughton*, 31 Wash. 327, 71 Pac. 1026.

"The rule is firmly established in this state that, where time is made of the essence of a contract of sale, the vendor may declare a forfeiture of the contract for nonpayment of the purchase price or any installment thereof . . . But the rule is equally well established that the right of forfeiture must be clearly and unequivocally proved, and that the right may be waived by extending the time for payment, or by indulgences granted to the purchaser . . ." *Douglas v. Hanbury*, 56 Wash. 63, 104 Pac. 1110, 134 Am. St. 1096.

The appellants argue that, under the contract, "the forfeiture is to be worked automatically after default." Assum-

ing, without deciding, that so long as time of payment was of the essence of the contract, and so treated, the obligation on the one hand to pay promptly at the time specified was a condition precedent, independent of the obligation on the other hand to convey, so that, on failure of prompt payment, the appellants might have declared a forfeiture without notice or tender of a deed conveying complete title (*Jennings v. Dexter Horton & Co.*, 43 Wash. 301, 86 Pac. 576), still, after the provision that time was of the essence had been waived, it would seem clear that the obligation on the one hand to pay and the obligation on the other to convey became mutual, concurrent and dependent. Neither party could thereafter put the other party in default or claim a forfeiture without first tendering performance on his own part, and this regardless of the forfeiture clause.

"After the respondents acquired their deed from the state, their obligation to convey and the obligation on the part of the purchaser to pay the purchase price became mutual, concurrent and dependent, and neither party could thereafter put the other in default or claim a forfeiture without first tendering performance on his part; and this, whether the contract contained a forfeiture clause or not. *Mudgett v. Clay*, 5 Wash. 103, 31 Pac. 424; *Underwood v. Tew*, 7 Wash. 297, 34 Pac. 1100; *Stein v. Waddell*, 37 Wash. 634, 80 Pac. 184; *Melick v. Cross*, 62 N. J. Eq. 545, 51 Atl. 16; 2 Warvelle, Vendors, p. 824. Under the above authorities, the respondents could only claim a forfeiture and put the appellant in default by tendering a deed and demanding payment of the purchase price. . . ." *Tacoma Water Supply Co. v. Dumermuth*, 51 Wash. 609, 99 Pac. 741.

This is certainly true as to the large contract upon which only the last payment of $100 and interest remained to be made. *Reese v. Westfield*, 56 Wash. 415, 105 Pac. 837, 28 L. R. A. (N. S.) 956.

As to whether the appellants ever gave any notice of an intention to forfeit, the evidence was, as we have seen, sharply conflicting. The appellants mainly rely upon their testimony to the effect that they wrote to respondent in April and again

in July of 1911, demanding payment and notifying her that, in default of payment, the contracts would be forfeited. The respondent testified that no such letters were ever received. Though the mailing of a letter is *prima facie* evidence that it was received, this court has distinctly held that it is nothing more, and that it will have but little weight against positive testimony that the letter was not received. *Ault v. Interstate Sav. & Loan Ass'n*, 15 Wash. 627, 47 Pac. 13. The trial court must have believed the respondent's statement that she never received either of these letters. Upon the whole record, we cannot say that the appellants established the fact that they ever gave to the respondent notice of a specific intention to declare a forfeiture. In *Douglas v. Hanbury, supra*, upon a similar state of facts, this court declined to disturb the court's finding that no such notice was established. In any event, as we have seen, having waived the provision that time was of the essence of the contract, it was incumbent upon the appellants to tender deeds in compliance with the contracts. It is clear that, at the time the appellants claim to have given the notice, they made no tender of a deed and were not in a position to convey a clear title. There were mortgages with almost a year to run covering all of the properties involved. There is no claim that a deed was actually tendered after the payments became due, or that there was any tender of a release of the mortgages. While these mortgages remained upon the properties, it was not within the power of the appellants to put the respondent in default merely by demanding payment, accompanied with a threat to forfeit. There was no legal declaration of a forfeiture, nor was the right to withdraw the contracts from escrow established.

II. The appellants urge that, though there had been no forfeiture, the respondent was not entitled to a rescission and to a recovery of her payments because she herself was in default and made no tender of payment. While the evidence of tender of the amount due on both contracts was not convinc-

ing, it seems clear that a tender was offered as to the larger contract and refused. But we consider the question of tender immaterial. The appellants, having withdrawn the contracts from escrow, without right and while they were in no position to have performed the contracts themselves, by a conveyance of the property free from incumbrance, had, in effect, rescinded the contracts on their own part. They cannot complain that the respondent accepted that act as a rescission on their part and claimed the right to a return of the money which she had paid. Having repudiated the contract without right, they cannot complain that the respondent met them on the ground which they themselves had elected to occupy. Having themselves rescinded the contract, the respondent was relieved from an offer of performance on her part. We have held, in a case where a vendor had himself repudiated the contract, that a tender of performance by the vendee was not a condition precedent to an action for specific performance. *Bruggemann v. Converse*, 47 Wash. 581, 92 Pac. 429. *A fortiori*, it would seem that, under like circumstances, a tender of performance by a vendee is not a condition precedent to the maintenance of an action for a return of the purchase money paid. This case is clearly distinguishable from *Webb v. Stephenson*, 11 Wash. 342, 39 Pac. 952, which is relied upon by the appellants. In that case, though the vendor was not in position to convey, the time for performance had not arrived and he had never rescinded nor in any manner repudiated the contract. Had he sought a forfeiture when he himself could not perform, the decision would have been different. The questions presented are largely questions of fact. We are convinced that the evidence was sufficient to sustain the judgment.

Affirmed.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.