[No. 12849. Department One. January 7, 1916.]

M. H. Cook, *Respondent*, v. E. H. Story, *Appellant.*[1]

SALES—EXPRESS CONTRACT—TENTATIVE AGREEMENTS—LIABILITY OF
BUYER AFTER REPUDIATION BY SELLER. Where a tentative contract for
the sale of goods was entered into with an agent subject to approval,
and the seller did not approve but repudiated it and offered a new
contract which the buyer rejected, cancelling all outstanding orders,
there was no express contract of sale upon which the seller could
recover for goods forwarded, and the buyer was not obligated to ac-
cept goods ordered on the faith of the tentative contract as a work-
ing basis, where the seller repudiated the contract before the arrival
of the goods; nor could the seller, after having repudiated the con-
tract, claim a ratification of it by previous orders under it.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered February 6, 1915, upon findings
in favor of the plaintiff, in an action on contract, tried to the
court. Reversed.

*G. C. Israel* and *H. B. Noland,* for appellant.

*Hayden, Langhorne & Metzger* and *McClure & McClure,*
for respondent.

ELLIS, J.—Action for the purchase price of certain auto-
mobile tires and tubes which it is alleged were sold and de-
livered to the defendant by plaintiff's assignor under a writ-
ten contract. The plaintiff's assignor, W. D. Newerf, doing
business as W. D. Newerf Rubber Company, in San Fran-
cisco and Los Angeles, was the Pacific coast agent for the
Miller Rubber Company, a corporation operating a tire
factory at Akron, Ohio. One C. W. Sahland, a traveling
salesman for the Newerf Company, met the defendant, Story,
in Seattle on May 28, 1913, and with him arranged the de-
tails of a contract appointing Story as general agent and
distributer for the Newerf Company in the sale of Miller
tires, tubes and accessories, the agency to cover the states of
Washington, Idaho and Montana.

[1]Reported in 154 Pac. 147.

Shortly after this conference, the parties went to Tacoma, and, at the office of Hugo Metzler, an attorney and secretary of the Auto Equipment Company, through which the defendant expected to supply the demand for Miller tires in that city, the defendant for himself, and Sahland for the Newerf Company, signed a tentative contract covering the three states for one year, subject to termination by either party on ninety days' notice. By this tentative contract, the defendant was to maintain at his own expense an office and show room in Seattle, carry a stock sufficient to meet the requirements of customers, and advertise the goods. The Newerf Company was to extend certain credit, furnish goods to the defendant at certain scheduled prices, allow certain trade and cash discounts, and make replacements of guaranteed tires on given terms.

This agreement was signed in duplicate, with the understanding that it was to be submitted to the Newerf Company for approval. Sahland throughout represented that he had no authority to finally approve the contract. This was testified to by the defendant and was admitted by Sahland himself. A blank for such approval appears at the foot of the contract. Sahland retained both copies of the contract for the purpose of submission to the Newerf Company for approval, stating that, if approved, one copy would be returned by the company to the defendant. He testified that he did in fact turn both copies over to the company for approval. It is admitted that the contract was never formally approved by the Newerf Company, and neither copy was ever returned to the defendant. On the contrary, a new contract, materially differing from the one submitted, and omitting from its operation the state of Montana, was prepared in duplicate by the Newerf Company and sent to the defendant with a request that he sign and return it for execution by the company.

On July 2, 1913, the defendant wrote the Newerf Company, declining to sign the new contract on the ground that

it was not in accordance with his agreement with Sahland, and declining to proceed further in the matter. He testified that he then cancelled all orders, amounting to $4,000 or $5,000, which he had given, and the fact is not contradicted. Apparently all orders on which goods had not been delivered, save one, were treated as cancelled. That order, which is the one here involved, arose as follows: On June 1, 1913, the Auto Equipment Company, through its president, Lindquist, had ordered, through Sahland, tires and tubes to the amount of $1,500, in anticipation of the races which were to take place at Tacoma in the first week of July. No word having been received from the order, the defendant, on June 10th, telegraphed the Newerf Company, among other things: "Wire Akron to ship me at Tacoma order prepared by Lindquist." The goods reached Tacoma about July 17th, billed to Miller Tire Company and Auto Equipment Company. Meanwhile, the Auto Equipment Company, having been advised that Story had closed his place of business in Seattle and severed his relations with the Newerf Company, sent one DeLand to San Francisco to make some arrangement with the Newerf Company. On July 9, 1913, he received from that company the following, which is termed in the record a letter of credit:

"San Francisco, Cal., July 9, 1913.
"Auto Equipment Co.,
"Tacoma, Wash.

"Gentlemen: In accordance with verbal understanding with Mr. John DeLand, we herewith grant you the privilege of selling Miller Quality Tires and Tubes, also other accessories carried by us, in the state of Washington until such time as we may close this territory with E. H. Story, yourselves, or other parties.

"We will furnish you, during this time, a stock of Miller Tires and Tubes not to exceed the amount of twenty-five hundred dollars. Such stock to be delivered either from San Francisco, Los Angeles or Akron, Ohio, in order to give the best service in supplying said stock.

"Your prices on Miller Tires, during this time, to be seven and one-half and five per cent from the two attached lists, you to pay us on the tenth of each month for all sales made from stock of Miller Tires furnished by us, when a further five per cent for cash will be allowed.

"Yours very truly,

"(Signed) W. D. Newerf Rubber Co.,

"Per J. E. Newerf."

He testified:

"On the 9th of July they gave me this letter of credit. I returned to Sacramento, then came here and went into the Auto Equipment. Mr. Lindquist and Mr. Metzler told me there was a shipment down there for Auto Equipment. It was about the 17th or 18th of July that the goods were delivered to us. Newerf had told me it was on the road and would be delivered to us on the letter of credit which I had at the time. They told me that when I was in San Francisco, and said the Story deal was off."

He also testified that, before returning to Tacoma, he went to Akron, Ohio, to arrange an agency for the Miller tires, and there met W. D. Newerf, who told him the same thing. Sahland, who was present at that interview, denied this, but admitted that DeLand was then told that "the deal with Story was entirely cancelled" and the Newerf and Miller Companies were at liberty to give the Washington agency to the Auto Equipment Company.

When the goods arrived in Tacoma, the railroad company, for some reason not explained, notified Story of that fact, but he refused to accept them and refused to authorize their delivery to the Auto Equipment Company, stating in effect that he would have nothing to do with the matter. The chief clerk of the freight agent of the railroad company at Tacoma testified that, on Story's refusal to accept the goods, he sent a telegram to the agent of the B. & O. Railroad, at Akron, Ohio, but was not permitted to state the contents of that telegram or what reply he received. At any rate, the goods were delivered to the Auto Equipment Company on July 17th. That company, as it now appears, was then in

failing circumstances, and went into the hands of a receiver soon afterwards.

The court found, in substance, that the goods were sold and delivered to the defendant under the terms of the written contract, and that there was a balance of $1,399.02 due thereon, for which amount, with interest at six per cent. from August 30, 1913, judgment was entered. The defendant appeals.

The appellant contends that no express contract was ever consummated, and hence the action, being on an express contract, cannot be maintained.

Under the evidence, we are clear that the execution of the written contract sued upon was never consummated. The tentative agreement was signed with the understanding that it would have to be submitted to the Newerf Company for approval. It was never approved, but was expressly repudiated by Newerf. A new and different contract was sent to him. He rejected it and cancelled all outstanding orders. The respondent seeks to meet this fact with the argument that no formal approval was necessary, in that the Newerf Company ratified the contract by accepting and filling orders under its terms. There would be force in this argument were it not for the undisputed fact that the Newerf Company expressly repudiated the first contract and sought to impose a new one. There was never thereafter an offer on the part of the Newerf Company to approve or deliver to appellant the old contract, or to continue operations under it. The fact that, under the first contract as a working basis, some goods were ordered, delivered and paid for, does not alter the fact that, even granting this sufficient to constitute a ratification, the Newerf Company itself refused to so regard it, or if so regarding it, rescinded the contract. Having itself repudiated or, what comes to the same thing, rescinded the contract, the Newerf Company cannot complain when the appellant meets it on the ground which it has elected to occupy. *Gibson v. Rouse,* 81 Wash. 102, 142 Pac.

464. The Newerf Company, before the arrival of the goods, having repudiated the contract upon the faith of which they were ordered, the appellant was under no obligation to accept them. He was under no obligation to thus lay himself open to the claim, now advanced as to the old contract, that he had ratified the new one by continuing to receive goods.

The respondent asserts that the contract forwarded to the appellant for execution was a "consignment contract" and not a selling contract, the inference being that it was not intended to take the place of the original agreement. This seems to be based upon a misconception of the record. It is true there had been some negotiations looking to a contract for taking goods on consignment, but the contract sent was, by its terms, a selling contract and bore a memorandum that it was "intended to take the place of the one signed and handed to Sahland May 28th." That such was its purpose, Sahland himself testified. A letter in evidence from Newerf to Story so indicates.

The respondent did not sue on a *quantum valebat*, nor was there any evidence directed to that issue. He sued upon an express contract which he failed to prove.

The judgment is reversed, and the cause is remanded with direction to dismiss.

MORRIS, C. J., CHADWICK, FULLERTON, and MOUNT, JJ., concur.