[No. 20366. Department One. April 15, 1927.]

## J. H. COWLEY et al., Plaintiffs, v. C. D. FOSTER et al., Appellants, ISADORE WEST, Respondent.[1]

[1] VENDOR AND PURCHASER (45)—RESCISSION BY VENDOR—RIGHT TO RESCIND—NONPAYMENT OF PURCHASE PRICE. Where time is made of the essence of the contract, the vendor may forfeit the contract for default in payments.

[2] SPECIFIC PERFORMANCE (27)—DILIGENCE—TIME OF THE ESSENCE OF THE CONTRACT. Specific performance of a contract to convey land will not be decreed where time was made the essence of the contract, and the vendee failed to comply with the contract in any part, and there was no acquiescence in the delay or default.

Appeal from a judgment of the superior court for King county, Kinne, J., entered July 12, 1926, upon findings in favor of the defendant, in an action for specific performance, tried to the court. Affirmed.

*Pierce Lonergan,* for appellants.

*Eugene A. Mueller,* for respondent.

MITCHELL, J.—Isadore West owned real property in Seattle. On August 12, 1925, he executed and delivered an instrument entitled "Revised form of earnest money receipt," by which he agreed to sell the property to C. D. Foster, who also signed the instrument agreeing to buy the property. The agreement was brought about by one Paul acting as agent for Foster. The instrument was filed and recorded in the county auditor's office on August 14, 1925. The contract admitted the receipt of one hundred dollars on a total purchase price of $8,100, the balance to be paid, $3,400 on acceptance of abstract or title insurance, assume a $2,200 mortgage already on the land, also a contract of approxi-

'Reported in 255 Pac. 129.

mately $900 against the property, and the balance of about $1,500 to be paid at the rate of fifty dollars per month with interest; abstract or title insurance to be furnished at the expense of the seller and sixty days allowed for examination of the title; the property to be conveyed by warranty deed free and clear, except as noted and except building restrictions and easements theretofore imposed on the property. The contract provided: "Time is the essence of the contract." There were other provisions in it not important in our consideration of the case. It appears that Foster and Paul were salesmen or in some way connected with the real estate firm of Cowley and Strickland of that city.

On October 27, 1925, Cowley and Strickland commenced this action against Foster and wife and West to have it decreed that they were the parties beneficially interested in the contract instead of Foster. West answered the complaint and filed a cross-complaint against plaintiffs and Foster and wife, which was amended before trial, alleging among other things that Foster was not a *bona fide* purchaser and that the contract would not have been executed but for the false representation to, and believed by, West that Foster was a *bona fide* purchaser; that the contract was obtained and filed of record for the purpose of clouding West's title to the land and extorting money from him and that the plaintiffs and Foster were all interested in the scheme; that there was no consideration for the contract; that Foster had failed to comply with its terms and that the time for doing so had expired. He prayed for damages, the quieting of his title and general relief.

Foster and wife answered the amended cross-complaint, denying its allegations generally and alleging affirmatively that they had performed in part and had tendered performance in other respects and were ready,

able and willing to perform. They prayed for a decree requiring specific performance by West. On motion of the plaintiffs, their action was dismissed as to Foster and wife before the trial of the case. Upon the trial, judgment was entered in favor of West cancelling the earnest money receipt and the record of it and quieting title to the real estate in him against all the other parties. Foster and wife have appealed.

Substantially, the evidence shows that the down payment of one hundred dollars mentioned in the contract was never paid to West upon Paul's representation that it would be used to procure an abstract or title insurance policy that West had agreed to furnish. Foster and Paul took a number of persons to the property, apparently trying to sell it to them. Some two weeks after the earnest money receipt was given, West, learning that no abstract or title insurance policy had been gotten by Foster or Paul, procured one at his own expense and furnished it to Foster. On October 26, 1925, the complaint of Cowley and Strickland against the Fosters and West was prepared and on that day verified by Cowley. Foster knew that day of the preparation of the complaint and consented to the commencement of the action. The next day, one E. W. Wood, a stranger to West, tendered him three thousand five hundred dollars in money on condition that West execute and deliver to him a deed or contract of the property, for which purpose Wood had brought such instrument with him. Foster was not present, nor was there any claim or pretense that Foster had made any transfer or assignment of his contract or in any manner authorized Wood to take his place under the contract. The tender was refused. Wood testified that his tender was not made on behalf of Foster and that, according to his understanding with Cowley and Strickland, it was not

supposed that West would accept the money from him, and further that he, Wood, would not have let West have it that day even if he had been willing to receive it; that his real purpose was to put the money and proposed contract in the bank as an escrow until such time as was agreeable to Cowley and Strickland. This, we understand, is the so-called tender referred to by Foster in his answer to the amended cross-complaint. It is the only one referred to in the testimony given at the trial.

After the Wood transaction and on the same day, the plaintiffs' complaint was filed and the suit started. In the meantime, about the middle of October, Strickland, without identifying himself, spoke to West about West's trouble over the earnest money receipt and told him to see Mr. Strickland, that he was sure Mr. Strickland was a good straight man and would see that he, West, "got out of the jam." In a few days, he went to Strickland's office and in a few moments a man came in that West recognized as the one who had spoken to him. This man took West to a quiet place in the building and told him that he was Strickland, and said: "That he wanted to feel me out a little bit." He told West that Foster was a crook and then proposed that, for two hundred fifty dollars he thought he could get Foster to straighten the matter up. West signed a check for fifty dollars and a note for two hundred dollars, no payee being named in either, and left them with Strickland. Paul told West that he would agree to get him out for one thousand dollars. Before the suit was commenced, West placed the matter with his lawyers, and two days after the action was commenced, Foster went to the office of West's lawyers and proposed to them that he would deliver his quit claim deed of the property to West, having brought such a deed with him, and see that the

Cowley and Strickland suit was dismissed, if they would "dig up $600 for him." West has never received as much as a dollar on the purchase price of the land. Foster has never tendered him anything on the purchase price of it. He admitted at the trial of the case in June, 1926, that he had never had the money to make the payments, although he testified that he could have raised it, but at a sacrifice he did not want to make, preferring to try to get something out of this deal without making payments at the sacrifice necessary to provide the means.

[1] The contract in question is a plain and simple one as to all those points necessary in deciding the case. The parties to it chose the terms used. It provided for certain payments at specified times. Time was made of the essence of the contract. Payments were not made or tendered according to the terms of the contract or at all. West did not express or suggest any waiver or leniency or promise of leniency. Foster offered no valid excuse or justification whatever for his failure to comply with the terms of his agreement. In Pomeroy's Equity Jurisprudence, (4th ed.), vol. 5, § 2331, p. 4982, the rule is stated as follows:

"*Time essential:* Where the time of payment by the vendee is made *essential,* and *a fortiori* where, if his payments are not made on the exact day named, the vendor may treat the contract as at an end, the vendee must make an actual tender of the price and a demand of the deed at a specified time. The same is true of the vendor where the time of conveying is made essential. This is the very meaning of time being of the essence of the contract."

West was entitled to the decree cancelling the contract and quieting title to his property.

[2] If the case be viewed from the other side, Foster and wife were not entitled to specific performance. This remedy, useful through the ages and governed by estab-

lished principles of equity, rests in the sound discretion of the court and is controlled by a just and fair consideration of all the facts and circumstances of each particular case. *Bower v. Bagley,* 9 Wash. 642, 38 Pac. 164; 25 R. C. L., § 16, p. 214. In the *Bower* case, just cited, it was said:

"If time is not the essence of the contract, and the party applying to the court has acted in good faith, and his cause is meritorious and equitable, he will obtain the relief demanded, even although the time for the performance has elapsed."

Such, however, are not the circumstances in this case.

In *Kiefer v. Carter Contracting & Hauling Co.,* 59 Wash. 108, 109 Pac. 332, which was a case growing out of an executory contract containing a time essence clause for the sale of real estate, the vendee seeking specific performance, this court quoted with approval and followed *Benedict v. Lynch,* 1 Johns. Ch. 370, 7 Am. Dec. 484, as follows:

"It may, then, be laid down as an acknowledged rule in courts of equity . . . that where the party who applies for a specific performance has omitted to execute his part of the contract by the time appointed for that purpose, without being able to assign any sufficient justification or excuse for his delay; and when there is nothing in the acts or conduct of the other party that amounts to an acquiescence in that delay, the court will not compel a specific performance. The rule appears to be founded in the soundest principles of policy and justice. Its tendency is to uphold good faith and punctuality in dealing."

Other cases to the same effect are *Benham v. Columbia Canal Co.,* 74 Wash. 110, 132 Pac. 884, and *Smith v. Barber,* 97 Wash. 18, 165 Pac. 873.

Affirmed.

MACKINTOSH, C. J., MAIN, FRENCH, and FULLERTON, JJ., concur.