[No. 22741. Department One. March 11, 1931,]

PACIFIC FINANCE CORPORATION, *Appellant,* v. H. V. WEBSTER, *Respondent.*[1]

*Robert B. Abel* and *George F. Abel,* for appellant.

*P. L. Pendleton* and *W. G. Palmer,* for respondent.

PARKER, J.—This is a replevin action commenced in the superior court for Pierce county by the plaintiff finance corporation, seeking recovery of possession from the defendant, Webster, of a Durant coach automobile, held by him as vendee under a conditional sale contract between the Paxson-Rife Motor Company, as vendor, and Webster, as vendee, which company has assigned its rights under the contract, and conveyed its title to the automobile, to the finance corporation. Recovery by the finance corporation is sought upon the theory that Webster has, by breach of conditions of the contract, forfeited all right to the

[1] Reported in 296 Pac. 809.

automobile. Webster, by his answer, denies breach of the conditions of the contract entitling the finance corporation to be awarded forfeiture of his rights thereunder, and claims damages resulting to him from the seizure of the automobile and the depriving him of possession thereof pending the action.

The cause proceeded to trial in the superior court, sitting with a jury, and resulted in a verdict in favor of Webster, embodying therein an award of damages to him in the sum of one hundred ninety dollars. Counsel for the finance corporation moved for judgment in its favor notwithstanding the verdict, and, in the alternative, for a new trial. The former was by the court denied; the latter was by the court denied, upon condition that Webster accept a reduced damage award in the sum of ninety dollars. This he accepted. Thereupon final judgment was rendered in favor of Webster, awarding him repossession of the automobile and damages in the sum of ninety dollars. From this disposition of the cause in the superior court, the finance corporation has appealed to this court.

The principal controlling facts, as the jury was warranted by the evidence in viewing them, we think, may be fairly summarized as follows: On June 5, 1929, at Portland, Oregon, the Paxson-Rife Motor Company of that city entered into a conditional sales contract with Webster, then also of that city, for the sale by it to him of a Durant coach automobile. The total agreed sale price was $993.12, of which $285 was on that day paid by Webster, the balance to be paid by him in installments of $39.34 each on the 5th day of each of the succeeding eighteen months. The contract provided that the purchaser

". . . shall not remove the automobile from the state of Oregon without seller's written permission; . . . Should the purchaser fail or neglect to comply

with any term or condition of this contract or to make any payment provided herein when due . . . the seller may, without notice to the purchaser, declare all the purchaser's rights under this contract terminated, and without demand first made and with or without legal process immediately take possession of said property . . .''

The contract further provided that the seller° may assign the contract so as to vest in its assignee all of its rights thereunder and also title to the automobile. The automobile was immediately delivered into the possession of Webster for his use while the contract remained in force, as contemplated by its terms.

Soon thereafter, and before the first installment of $39.34 became due on July 5, 1929, the seller, Paxson-Rife Motor Company, assigned all its rights under the contract and conveyed its title to the automobile to the finance corporation; which corporation, at all times in question, has been doing business in both of the states of Oregon and Washington, with offices at Portland and Tacoma. The installments due July 5 and August 5, 1929, were paid by Webster to the finance corporation at its Portland office.

About September 1, 1929, Webster became under business necessity of moving to Tacoma. He personally so advised the Portland office, and was there, as he testified, told by someone apparently in charge of that office: ''It don't make any difference where you go. As long as we have an office in Tacoma you can make the payments there.'' Webster then moved to Tacoma, taking the automobile with him, and establishing his business and residence there.

On September 12, 1929, the finance corporation wrote from its Portland office to Webster at his home address in Tacoma, claiming that he had, without its permission, removed the automobile from Oregon to Wash-

ington, and requesting him to sign a new contract. This he did not do, and the finance corporation did not then or thereafter claim forfeiture of his rights under the contract because of such removal of the automobile to this state, until after the commencement of this action.

Subsequently maturing installments up to and including the one due March 5, 1930, were all paid by Webster and accepted by the finance corporation at its Tacoma office. The installment due September 5 was not paid by Webster until September 13; the installment due December 5 was not paid by Webster until December 13; the installment due January 5 was not paid by Webster until January 20.

On May 2, 1930, the finance corporation commenced this action, and on the following day sent the sheriff, accompanied by one of its collectors, with a writ of replevin, to seize the automobile. At that time the installment due April 5 was unpaid, and was the sole default alleged in the complaint as grounds of forfeiture of Webster's rights under the contract. Webster then tendered to the collector payment of the installment due April 5. This tender was refused, and the automobile then seized and taken from the possession of Webster.

No prior demand or declaration of intent to claim forfeiture by the finance corporation was made by it or anyone for it. The finance corporation proceeded upon the theory that it had the right of forfeiture of Webster's rights under the contract, without making any demand upon him, or prior warning to him, of its intent to claim such forfeiture, regardless of its prior indulgences to him. Webster immediately served and filed his answer in the action, and deposited with the clerk of the court $39.34 to keep his tender good.

 Contention is made in behalf of the finance corporation that it is entitled to judgment in its favor, because it is an admitted and conclusively established fact that Webster was in default in payment of the April 5th installment at the time the finance corporation, by the commencement of this action and the seizure of the automobile on May 2 and 3, elected to exercise its right of forfeiture.

We may concede that, if the finance corporation had not indulged Webster by its acceptance from him of payment of several past due installments, this contention might be considered as well grounded. But such payments having been so accepted by the finance corporation, and it to that extent having waived strict compliance with the terms of the contract as to time of payment, we think it should not be by the court decided that the jury wrongly decided, in effect, such waiver of the finanance corporation to be a waiver of its rights to declare forfeiture of Webster's rights under the contract, without first giving him notice and reasonable opportunity to cure his default by the payment of the single April 5th installment. The applicable law is well stated by Judge Bridges in *Wadham v. McVicar*, 115 Wash. 503, 197 Pac. 616, as follows:

"Parties have a right to agree that payments must and will be made at a designated time, and that, if not so made, the contract may be terminated and a forfeiture declared, and the courts will strictly enforce such agreements. But the parties, having made such a contract, may by their conduct waive its strict performance, and where there is such a waiver neither party can put the other in default or claim a forfeiture without first having given notice of intention so to do, with a reasonable time within which such other party may perform. Forfeitures are not favored in the law, and courts will promptly seize upon any circumstances arising out of the contract or the actions or relations

of the parties in order to avoid a forfeiture. Strict performance may be waived by receiving, without objection, payment after the time provided in the contract or by granting other indulgences.''

The following of our former decisions illustrate and lend strong support to this general statement of the law: *Whiting v. Doughton*, 31 Wash. 327, 71 Pac. 1026; *Morgan v. Northwestern Nat. Life Ins. Co.*, 42 Wash. 10, 84 Pac. 412, 7 Ann. Cas. 382; *Douglas v. Hanbury*, 56 Wash. 63, 104 Pac. 1110, 134 Am. St. 1096; *Shorett v. Knudsen*, 74 Wash. 448, 133 Pac. 1029; *Gibson v. Rouse*, 81 Wash. 102, 142 Pac. 464.

Contention is further made in behalf of the finance corporation that it is entitled to judgment in its favor, because of the removal of the automobile by Webster from Oregon to Washington. We think there is abundant evidence warranting the jury in believing that such removal to and keeping of the automobile in this state was acquiesced in by the finance corporation over a period of several months, by its dealings with Webster at its Tacoma office. The decisions, above noticed, we think, call for the conclusion that this contention should not be sustained.

Counsel for the finance corporation call attention to our decisions in *Cowley v. Foster*, 143 Wash. 302, 255 Pac. 129, and *Lundberg v. Switzer*, 146 Wash. 416, 263 Pac. 178. In the *Cowley* case there was no question of indulgences by the vendor to the vendee. No payment at all was made upon the contract there in question after the making of the first comparatively small initial payment of $100 on a total purchase price of $8,100. In the *Lundberg* case there was embodied in the conditional sales contract there in question an express agreement as follows:

'' 'It is agreed that any extension of the time of any payment, or the acceptance of a part thereof, or the

failure of the vendor to promptly enforce any other breach of this contract by the purchaser, shall not be construed as a waiver on the part of the vendor of the strict performance of all the conditions herein contained, and the vendor may, nevertheless, without notice, enforce the performance of the contract by forfeiture and termination thereof, as herein provided upon any breach by the purchaser of any of the conditions herein contained or upon failure to make prompt payment according to any extension made.' "

We do not find any such express agreement in the conditional sales contract here in question. We think neither of these decisions is controlling in our present inquiry.

We conclude that the judgment must be affirmed. It is so ordered.

TOLMAN, C. J., MITCHELL, HOLCOMB, and MAIN, JJ., concur.