[No. 25357. Department Two. April 27, 1935.]

EARL H. PEARSON, *Respondent*, v. E. W. PICCO, *Appellant*.[1]

O. M. *Nelson*, for appellant.
A. P. *Wilson*, for respondent.

MILLARD, C. J.—E. W. Picco sold a Studebaker coupe on conditional sales contract to Mike Reichlin. The vendee paid $295 on the purchase price of $1,273.80 at the time of the execution of the contract, and obligated

[1]Reported in 44 P. (2d) 186.

himself to pay the balance of $978.80 in eighteen monthly installments of $54.38, commencing July 10; 1931. On or about June 12, 1931, Picco assigned the contract to the C. I. T. Corporation. From the date of the delivery of the car to him until January 14, 1933, the car was in the possession of Reichlin, who had paid by that time the greater portion of the agreed purchase price. On January 1, 1933, Reichlin was delinquent in payment of the installments due on the automobile, the total unpaid balance then being approximately $168; that is, he was delinquent in the payment of three installments.

On January 14, 1933, the C. I. T. Corporation made written demand on Reichlin to place the car in storage and granted him until January 25th to pay the balance due. That letter reads as follows:

"Confirming our Mr. Cramer's conversation with you, in view of the delinquency of your account and the necessity that we ask that the car be placed in storage, we are willing to give until January 25 to pay the balance of $168.10.

"We know you are desirous of protecting what equity you have in the car and trust that you will comply with our request."

A copy of this letter was transmitted by the C. I. T. Corporation to Picco, who was requested, as follows, to assist in the collection of the amount due:

"The above is self-explanatory. We would appreciate your good cooperation in following through on this, and in any event, your check to retire in accordance with the above will be appreciated in accordance with your conversation with our Mr. Cramer."

On January 31, 1933, the C. I. T. Corporation requested Picco, as follows, to pay the balance of $163.10 to retire the contract, as Reichlin had not paid the same:

"This purchaser has failed to arrange for the payment of a balance of $163.10 in accordance with our Mr. Cramer's arrangements with him and in accordance with Mr. Cramer's understanding with you, this was to be considered a permanent repossession in the event that it was not paid by January 25.

"We have marked our records in accordance with this and if we are correct, will you kindly arrange to forward us your check in the amount of $163.10 to retire the contract."

On February 23, 1933, the C. I. T. Corporation wrote the following letter to Reichlin, informing the latter of receipt of a remittance from Picco:

"Confirming our Mr. Cramer's arrangements with you through the Picco Motor Company, in order that you may protect the equity you have in the car, we have applied the remittance received today from Picco Motor Company to your account and adjusted our records that by April first we will receive the balance owing of $38.76.

"Upon receipt of this letter, kindly let us hear from you with your assurance that payment will be made promptly as of that date."

It appears that, on February 20th, Picco remitted $102.40 to the C. I. T. Corporation, eighty dollars of which was payment on the sales contract. On April 20, 1933, the C. I. T. Corporation telegraphed Reichlin as follows:

"Imperative you forward us ninety three dollars ninety cents today or return car to dealer."

A copy of this telegram was transmitted to Picco, with notation thereon as follows:

"Picco Motor Company—We will appreciate your advising us if the purchaser returns the car to you, and any assistance you can give us in getting the balance cleared away will be greatly appreciated."

Picco went to Reichlin and obtained the car and stored it in his garage in Montesano, Washington. At the

same time, Reichlin pledged his interest or equity in the car to Picco as security for payment of his indebtedness to Picco. At that time, Reichlin owed Picco $373, eighty dollars of which had been advanced to the C. I. T. Corporation by Picco for Reichlin on the sales contract. That written pledge reads as follows:

"E. W. Picco,                    Montesano, Washington
"City.                              April 22, 1933
"I hereby turn over to you my interest in my car, Studebaker Commander Eight Coupe, Motor No. 16758—Serial No. 8016204, as security for the bill or account I owe you."

On May 11, 1933, Earl H. Pearson commenced an action against Reichlin in a justice of the peace court to enforce payment of indebtedness of $61.96. At the time of the filing of the complaint, respondent attached the automobile, which is the subject-matter of this controversy, as security for such judgment as he might recover. The automobile was then in the possession of Picco, and the attaching officer stored the automobile with Picco under authority of the writ of attachment. On May 18, 1933, Pearson recovered a judgment against Reichlin for $61.96, with costs. Writ of execution issued and sale of the automobile was set for June 6, 1933, which was by agreement continued to June 9th.

A representative of the C. I. T. Corporation called on Pearson on May 19th and demanded the balance due on the conditional sales contract in the amount of $99.30 or that the automobile be released to the C. I. T. Corporation. Pearson paid the C. I. T. Corporation the balance due of $99.30, whereupon the C. I. T. Corporation assigned the sales contract to Pearson. On June 9, when the sale was to be made under and by virtue of the writ of execution, Pearson's attorney announced that the sale would not be held, and stated that Pearson elected to declare a forfeiture of the con-

ditional sales contract for failure of Reichlin to make the payments due on the purchase price. Pearson's demand at that time for surrender of the car was refused by Picco.

On June 15, 1933, Pearson commenced an action against Picco to replevy the car. Prior to the commencement of that action, Picco tendered to Pearson the total amount of the unpaid balance on the conditional sales contract, which tender was refused by Pearson. The tender was kept good by deposit of same in court. Trial to the court of the action resulted in findings of fact and judgment in favor of plaintiff. Defendant appealed.

The C. I. T. Corporation made an absolute assignment—as it had the right to do—to respondent of its interest in the conditional sales contract.

"As in the case of other contracts, a conditional seller of goods may make an absolute assignment of his right or interest in the goods and the contract." 55 C. J. 1330, § 1409.

Reichlin, the conditional sales vendee, had an interest which he could assign, sell, mortgage, or give away, subject to the rights of the conditional sales vendor or the latter's assignee.

"While there is some authority apparently to the contrary, it is very generally held that a buyer of goods under a conditional sales contract has an interest which he may assign." 55 C. J. 1330, § 1410.

"Where the buyer under a conditional sales contract makes an absolute sale of the property, this amounts to an assignment of the contract; and it constitutes nothing more, since as already shown the buyer has no title to the property which he may convey but merely an interest which he may sell, mortgage or give away subject to the rights of the seller." 55 C. J. 1331, § 1413.

Such interest as Reichlin had was pledged by him to appellant as security for payment of the indebtedness

of $373. The assignment or sale by the C. I. T. Corporation of its interest to respondent was absolute and unconditional. By that purchase, respondent acquired all the right, title and interest the C. I. T. Corporation had. That assignment carried all the remedies to which the C. I. T. Corporation was entitled. It must also be borne in mind that respondent assignee became subject to all of his assignor's liabilities so far as the contract is concerned, and he took the contract subject to all the defenses available against the assignor. Respondent acquired no other title or rights than his assignor possessed.

"By virtue of the assignment the assignee acquires his assignor's rights against the buyer, including the right to enforce a forfeiture by reason of the buyer's default, or to bring an action for the possession of the property; but the assignee acquires no right not possessed by his assignor." 55 C. J. 1333, § 1415.

■ If the conditional sales vendor—to all intents and purposes the C. I. T. Corporation was the vendor —granted an extension of time for making payments, the vendor's assignee (respondent) cannot forfeit the contract for default in payments without giving notice and a reasonable time to make them. That is, respondent assignee could not forfeit the contract without giving the buyer an opportunity to pay according to extensions theretofore granted by the seller. *Cunningham v. Long,* 134 Wash. 433, 235 Pac. 964.

The assignment or pledge by Reichlin to appellant carried with it all the buyer's rights, and imposed on the assignee all the buyer's liabilities under the conditional sales contract, but it carried only such rights as the buyer possessed. 55 C. J. 1337, § 1425.

That the C. I. T. Corporation did not intend to insist upon its rights of forfeiture is clear from a reading of the facts recited above.

On January 14, 1933, the C. I. T. Corporation demanded of Reichlin payment by January 25th of the balance due under the contract. Payment was not made. On January 31, 1933, the C. I. T. Corporation requested Picco to pay the balance to retire the contract, as Reichlin had not acceded to the demand to make the payment on January 25. Almost a month later, the C. I. T. Corporation advised Reichlin that it had received a remittance from appellant, and advised Reichlin that it expected receipt of the balance of $38.76 by April 1. The balance due from Reichlin was not paid. On April 20 the C. I. T. Corporation telegraphed Reichlin to forward the balance due of $93.90 or to return the car to Picco. The payment was not made by Reichlin, who then surrendered the car to Picco, to whom Reichlin pledged his interest in the subject-matter of this controversy to secure payment of Reichlin's indebtedness of $373 to Picco.

After the lapse of approximately one month and following the judgment obtained by respondent in justice court against Reichlin, the C. I. T. Corporation assigned its interest in the conditional sales contract to respondent on payment by the latter to the former of the balance due of $99.30. Not only was the time for the payment of the past due installments upon the automobile extended, but the additional time granted had expired. No notice was thereafter given of the intention of the C. I. T. Corporation to institute proceedings for repossession of the car or to take advantage of the forfeiture provision of the contract.

We held in *Beardslee v. North Pacific Finance Corporation,* 161 Wash. 86, 296 Pac. 155, that, where the time for payment of past due installments was extended and the additional time granted had expired, the purchaser was entitled to reasonable notice of the

vendor's intention to institute proceedings for repossession of the car.

We also held, in *Pacific Finance Corporation v. Webster*, 161 Wash. 255, 296 Pac. 809, that, where the finance corporation accepted payments from the vendee of several past due installments, the finance corporation waived strict compliance with the terms of the contract as to time of payment.

There was, in the case at bar, acceptance of past due installments of the contract. By such acceptance, the finance corporation waived strict compliance with the terms of the contract as to the time of payment, therefore the vendee was entitled to notice giving a reasonable opportunity to cure default on the next installment or the balance due. In the case at bar, the parties were negotiating for payment of the balance, and, as stated above, no notice whatever was given of repossession or forfeiture. Respondent, who stands in the shoes of his assignor, did not give reasonable notice of his intention to forfeit the contract. His rights are the same as his assignor, the finance corporation.

It follows that the judgment should be, and it is, reversed.

BEALS, BLAKE, and STEINERT, JJ., concur.