## Laura N. Asbury, et al. v. Gordon O. Asbury, et al.

(Decided March 8, 1927.)

### Appeal from Boone Circuit Court.

1. Wills—Heirs' Forbearance to Contest Will is Sufficient Consideration to Uphold Family Settlement, Regardless of Grounds of Contest.—Forbearance to institute will contest by heirs at law is sufficient consideration to uphold family settlement, where settlement is fairly made, regardless of grounds of proposed contest.

2. Wills—Compromise Under Will, Obtained by Testator's Sons from Widow and Daughter in Brutal Manner, Through Misrepresenta-

tion of Father's Indebtedness and Groundless Threat of Contest, Held Set Aside.—Where testator's sons, dissatisfied with will, obtained from widow and daughter compromise settlement under threats of will contest and in brutal manner, giving no opportunity for consultation, compromise settlement held set aside on showing that sons misrepresented claim of father's indebtedness and had meager grounds of contest, if any; settlement which they obtained being division of property among children after mother's death, whereas under will sons' legacy was admittedly worthless.

3.   Compromise and Settlement—Inadequacy of Consideration for Settlement May be Considered in Determining Bad Faith.— Though adequacy of consideration may not be inquired into as independent ground for setting aside settlement, it may be considered as circumstance in determining whether or not settlement agreement was procured in bad faith.

A. E. STRICKLETT for appellants.

O. M. ROGERS for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS— Reversing.

In this suit to cancel a compromise agreement made between the heirs at law of J. S. Asbury, deceased, in consideration of forbearance upon the part of the sons of the deceased to contest the latter's will, the lower court found for the defendants and dismissed the petition. Plaintiffs, the widow and daughter of deceased, the beneficiaries under his will, appeal.

By the terms of the will some admittedly worthless mining stock was given the three sons and the residue of the estate of the value of $12,000.00 was devised to the widow and daughter. By the compromise settlement the widow was given the household effects and $1,050.00 stock in an insurance company. The residue of the property was to be sold by C. T. Asbury as trustee, and Maud, the daughter, was to be refunded $400.00 which she had paid for her father's burial. Mrs. Asbury was to be paid 6% on the remainder during her life and at her death the trust estate was to be divided equally between the four children; provided that the daughter might withdraw her part at any time, the mother agreeing to waive interest thereon; C. T. Asbury to act as trustee without charge.

The grounds urged for reversal are: (1) There was no consideration for the compromise. (2) The agreement was obtained by fraud of appellees. These questions can best be understood by a detailed statement of fact.

J. N. Asbury, a farmer, living near Burlington, in Boone county, died testate in March, 1923. He had married twice and had three sons by his first marriage, and a daughter by the second. All of these and his second wife survived him. The sons are of middle age; of these C. T. lived in Lexington, Gordon in Maysville and Howard in the state of Iowa. The daughter Maud, who was twenty-five years of age, made her home with her parents, but was teaching school in Paris at the time of her father's death. The widow was physically unable to attend the burial. A few days later Howard visited her and asked her in reference to the will and she informed him of its contents, and he expressed himself as satisfied therewith. Subsequent to this, but before the probate, C. T. visited the subscribing witnesses and made some investigations in reference to a probable contest. He and Gordon as well as the two ladies were present at the probate of the will on March 2, 1923. No objection was entered to this and they accompanied the ladies to their home, took dinner and spent part of the afternoon. They expressed themselves as dissatisfied with the will, and, as testified by them, said they would contest it unless the beneficiaries would agree to an equal division of the property among the heirs. The ladies admit this conversation, except they deny that any proposition of settlement was made. A few days later Mrs. Asbury consulted with the county judge as to a probable contest of the will, though without mentioning any proposed settlement, and he advised her to "sit steady in the boat," but it does not appear that any of the details of the matter were discussed.

On the 18th of April C. T. Asbury telephoned his sister Maud at Paris that he was going to Burlington the following Saturday, the twentieth, to settle the matter. She went home the following day and informed her mother. On the day named he and Gordon arrived. Dinner was served and thereafter an animated discussion ensued.

The brothers claimed that their father had collected the sale price of certain valuable land belonging to their mother and had only paid them $1,000.00 of this, under an agreement that, if they would sign the deed, what he had left at his death would be equally divided among them and his daughter Maud. They also stated that they had consulted a lawyer and unless an immediate

settlement was made would file a will contest and fight the case through all the courts.

The ladies testify that appellees said they had the money to make the fight and that the entire estate would be consumed in litigation; that Maud asked time to consider and to consult a lawyer, stating that her father had told her that he had settled with them for their interest in the mother's land. Gordon disputed this and Maud said she would believe her father. Gordon arose, shouted in an angry and brutal manner, "Do you mean to call me a liar?" Maud ran from the room and entreated her aunt, who was the only other member of the household, to stay with them. The brothers flatly refused to give further time for consideration. Mrs. Asbury was ill and nervous, lying on the bed most of the time, and says she was so worried from fear of losing all of the estate that she consented to accept a part only. Maud insists that she wanted to consult an attorney and was unwilling to agree, but feared her mother would lose her mind and finally assented.

The brothers testify that the proposition was made the day the will was probated and that this trip was made for the purpose of receiving an answer; that the ladies received them pleasantly and the terms of settlement were discussed in a friendly spirit. They did tell them that the will was unfair and that their father had only paid them $1,000.00 for their mother's land; that he was unable then to pay more but promised them that if they would sign the deed his property should be equally divided among them and Maud at his death; that unless a settlement was made they would contest and fight it through all the courts; they did not say that all of the estate would be consumed in litigation, but admit that they did say "it would go up in smoke;" that they retired from the house, leaving the ladies time to consult, and that after a time they were recalled and Mrs. Asbury made several suggestions which were adopted; that she then said the proposition was fair and just and that she wanted to accept it. Maud wanted to delay the matter, but they told her they could not make any more trips for that purpose and she also agreed. After the agreement was reached the parties got into a car and went to Burlington. C. T. Asbury found the county attorney and detailed to him the terms of the agreement, of which he

made a pencil memorandum. All of the parties were called into his office and a few minor changes made in the memorandum, which was then typed. In its permanent form it was re-read to the parties, who executed and acknowledged it before a proper officer, and it was recorded, nothing being said or done at this time to indicate that the parties were not in accord. Subsequently C. T. Asbury executed bond and advertised the farm for sale on June 24th. At that time Mrs. Asbury was sick in the hospital. She was consulted and expressed an unwillingness to sell the land for less than $70.00 per acre. C. T. Asbury stated this at the sale, and as that price was not reached in the bidding the sale was declared off. Later the parties sold thirty acres at $75.00 per acre and the debts were paid, including the debt owing to Maud. The affairs ran along in this way until October, 1924, at which time C. T. Asbury again advertised the farm for sale, and this suit was filed by Mrs. Asbury, Maud and her husband, she having married in the meantime, to restrain the sale and cancel the contract.

It further appears that by deed executed on the 23rd of March, 1910, the testator, J. S. Asbury, and his second wife conveyed a boundary of land embracing 304 acres for the recited consideration of $37,657.30; the three sons and their wives joined in this conveyance to the extent of conveying their mother's interest in such lands. By a stipulation in the record it is agreed that she owned a one-sixth interest in 172 acres embraced in that boundary. It does not appear that the lands in which she had an interest differed in value from the other land sold. It is also admitted by appellees that their father paid them $1,000.00 each of the consideration, or a total of $3,000.00, and that their mother died in 1892.

Cross-examined as to his grounds of contest C. T. Asbury testifies that his father was as strong and healthy a man as he ever saw and makes no claim of mental incapacity or undue influence, the only grounds of contest that he mentions being that the will was unfair and that the first heirs had not received their interest in their mother's lands, and that his lawyer had told him that this would be sufficient grounds upon which to file a contest.

On these facts appellants claim, first, that the compromise settlement was without consideration; (2) that it was procured by fraud.

(1)   It is generally held that forbearance to insti-
tute a will contest by an heir at law is a sufficient con-
sideration to uphold a family settlement, and when such
a settlement is fairly made it will be upheld without in-
quiring into the grounds of the proposed contest. As
said in Seaman v. Seaman, 12 Wend. 381:

> "Whether he (the heir) succeeded in the litiga-
> gation is not a test. . . . It is enough that he
> yielded to his adversaries as he has done, and the
> compromise itself proves *prima facie* an acknowl-
> edgment by the defendant that there was ground for
> his claim." See 5 R. C. L., subject Compromise,.
> secs. 6, 7, 12, 13.

In the leading case of Sellers v. Jones, 164 Ky. 460,.
upon an elaborate review of the authorities we said:

> "It is well settled that forbearance to sue is a
> sufficient consideration to support a promise. . . .
> Forbearance to sue on a claim clearly groundless is
> not a sufficient consideration, for the reason that
> the promotion of such a suit would be either fraud-
> ulent or wanting in good faith, but, short of that,.
> forbearance to sue is a good consideration for a
> promise founded thereon. It is only essential that
> the claim be doubtful either in law or equity, and as-
> serted in good faith. Elliott on Contracts, sec. 235;
> Robinson v. Gould, 11 Cush. (Mass.)) 55; Steadman
> v. Guthrie, 4 Metc. 147; Cline & Co. v. Templeton, 78
> Ky. 550; Matthews v. Morris, 41 Ark. 222; Macklin v.
> Dwyer (Mass.), 91 N. E. 893; Rue v. Meirs, 43 N. J.
> Eq. 377; Longridge v. Dorville, 5 B. & A. 117. . . .
> Indeed the contention that such agreements are with-
> out consideration or are contrary to public policy
> is generally rejected. According to the weight of
> authority neither ground is sufficient to invalidate .
> the agreement, unless it.appears that the agreement
> was secured through threats to contest the probate
> of the will in bad faith as a means of extorting a
> settlement."

Clearly this rule is established by authority, is sound
in principle and will apply where no specific grounds
of contest are urged as the acceptance of the compromise
is *prima facie* an acknowledgment of such grounds. But
it is argued that C. T. Asbury specified as the only basis

of his proposed contest inequality in the will and a debt owing the first heirs by the father's estate, neither of which if true would constitute sufficient evidence to uphold a contest or furnish a claim upon the legality of which a *bona fide* difference of opinion could exist. While debatable we may assume for the purpose of this case that if such facts existed a forbearance to contest is a sufficient consideration to uphold an otherwise fair settlement. It will also be observed that if appellees' father actually owed them a debt which was contracted in consideration of his agreeing to divide his property equally at his death, such indebtedness would constitute an enforceable claim against his estate, all of which was devised appellants; and that the surrender of this claim no doubt entered into the consideration, and, if valid, was sufficient to uphold the settlement. It remains to be seen whether the agreement was secured through groundless claims or threats to contest the will made in bad faith as a means of extorting a settlement. It will be observed that the ladies received in the compromise practically the same property they would have received if the will had been set aside in a contest, and that relief from the costs of litigation is all they received for surrendering practically half of the estate. Unquestionably this was a very slight consideration, and while the adequacy of the consideration may not be inquired into as an independent reason for setting aside the settlement, it is a circumstance to be considered in determining whether or not the agreement was procured in bad faith.

If the appellees had in good faith desired a fair settlement with their sister and her mother, they should have fairly stated the facts which they urged and have given them reasonable time to consider and to advise with any one of their choice. There was no cause for precipitate action and no reason for uncouth or ungentlemanly conduct. Such was not the course pursued by them. In reiterating their two alleged grounds of contest great stress seems to have been laid on their claim that their father had not paid them their interest in the proceeds of the mother's land. The stipulation of fact shows this to have been untrue. The father's curtesy right in the land of his first wife accrued before the passage of the act of 1894, and when this is taken into consideration it appears that he had considerably over-

paid his sons for their interest in that land, but when Maud said her father had told her that he had paid it and insisted that she would believe him, Gordon bullied her by exclaiming in a ruffianly manner, "Do you mean to call me a liar?" and so frightened her that she ran from the room. It thus appears that this alleged claim could not have been recovered against the estate and that the principal ground urged for the contest did not exist in fact; that they deceived the ladies as to this, and denied them the right to consult a lawyer as to its legal effect, and with brutal directness laid down their terms and demanded an immediate acceptance or rejection. Considering this conduct, the meager grounds of contest and the misrepresentations as to their father's indebtedness as well as the inadequacy of the consideration, it is clearly evident that the threats of contest were made in bad faith and as a means to extort a settlement.

There is still time for a will contest. The estate is intact and the parties may be placed *in statu quo* by returning to C. T. Asbury any *bona fide* expenditures that he may have incurred as trustee and for which he has not been paid by the estate.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.