[No. 21662. Department One. March 14, 1929.]

EDWARD A. COLLINS *et al., Appellants,* v. ALBERT T. COLLINS, *et al., Respondents.*[1]

[1]Reported in 275 Pac. 571.

202

*Hayden, Langhorne & Metzger* and *Clifford M. Langhorne,* for appellants.

*Henderson, Carnahan & Thompson,* for respondents.

HOLCOMB, J.—Mary E. Collins died in Tacoma, Pierce county, on January 17, 1927, leaving a last will and testament whereby she disposed of an estate con-

sisting entirely of cash and negotiable securities which were appraised on March 14, 1927, at $16,750.73. The will was admitted to probate in Pierce county on March 9, 1927. At the time of her death she was survived by five sons and two daughters, all adults, and two minor granddaughters who were children of a deceased daughter.

To each of her two daughters, Mrs. C. B. (known as Burt) Payne of New Rockford, North Dakota, and Roxana Thomas of St. Paul, Minnesota, $250 was bequeathed. To her sons, E. A. Collins, of Fort Lewis, Washington, and R. E. Collins, of Auburn, Washington, $500 each was bequeathed. She bequeathed to her son, Williard L. Collins of Anaconda, Montana, $1,000; to her son R. L. Collins of Butte, Montana, $2,000 and the proceeds of a life insurance policy of $187.50; to her nephew, R. T. Madden, $500; and to A. T. Collins, of Seattle, in trust, $500 each for the use of her two granddaughters, Mary Loraine Morash and Frances Monica Morash. The residue of the estate was left entirely to A. T. Collins, respondent herein.

This action was brought by five heirs of the deceased, to enforce specific performance by respondent A. T. Collins, the principal beneficiary under the will and one of the heirs of deceased, of an alleged contract entered into by him and the six other heirs named in the will of deceased to divide the estate equally, with the exception of the provisions for bequests to the nephew and the two granddaughters, regardless of the provisions of the will to the contrary.

It is alleged that the six heirs referred to agreed to forbear instituting a contest to break the provisions of the will upon the ground of fraud and undue influence, which they believed to have been exercised upon the deceased by A. T. Collins, in consideration of which forbearance, respondent A. T. Collins entered

into the contract. Roxana Thomas, one of the daughters and an heir, refused to join in the action and was consequently joined as a defendant.

The record shows that the last five years of the life of the deceased were spent in the home of respondent A. T. Collins in Tacoma.

During that time, the members of the family knew of the existence of a will made by the deceased, whereby she left all of her estate to her children in equal shares. Shortly after her death, they learned that that will had been destroyed, and a new will made, bequeathing the property as above set forth. The members of the family, with the exception of A. T. Collins, were very much dissatisfied with the distribution of the estate under the last will, and it was indicated by some of them that there were good reasons for attempting to have the will set aside upon the grounds of fraud and undue influence on the part of A. T. Collins.

The will which was probated named four executors; W. L. Collins, R. L. Collins, E. A. Collins and A. T. Collins. The first two, being residents of Montana, waived their rights as executors in favor of E. A. Collins and A. T. Collins.

A. T. Collins is commonly called "Tim"; E. A. Collins, "Ed"; W. L. Collins, "Bill"; R. E. Collins, "Dick"; R. L. Collins, "Ralph"; Mrs. Thomas, "Rox"; and Mrs. Payne, "Burt", by the family in mentioning each other.

On February 7, 1927, E. A. Collins and A. T. Collins went to the courthouse in Tacoma for the purpose of probating the will, where the clerk informed them that they required the services of an attorney. After leaving the courthouse, they engaged in a controversy concerning the provisions of the will, and E. A. Collins then informed A. T. Collins of the dissatisfaction of the family with the will, and expressed the intention on

the part of the rest of the family to institute a contest to break it.

At that time, according to the testimony of E. A. Collins, his brother A. T. Collins promised that he would make an "agreeable settlement" with his brothers and sisters. Tim, himself, testified at the trial that he intended to share the estate equally with his brothers and sisters at the time of that controversy. He had also expressed the same intention to his brother Bill on or about January 17, the day of the funeral of their mother.

After the will was admitted to probate, the two executors met again in Tacoma on business connected with the estate, and it was agreed between them that the estate would be equally divided among all the brothers and sisters, after first paying the bequests to the nephew and the grandchildren. Tim Collins admittedly gave his consent that Ed write to the various members of the family of that arrangement. Therefore, under date of April 14, 1927, E. A. Collins wrote the following letter (which the parties generally refer to as a "chain letter", but which being sent directly to all the addressees by the writer is more like an encyclic letter):

"Burt Payne                    Camp Lewis, Washington,
Bill Collins                        April 14th, 1927
Dick Collins
Ralph Collins
Rox Thomas
Tim Collins and Myself.

"Tim and I met by appointment at Tacoma on Wednesday, April 13th, for the purpose of checking into the new bank the accounts that have been transferred from the Seattle banks, also the establishment of a new safety deposit box at the National Bank of Tacoma for the safe keeping of securities. The above bank also is being used as depositary for funds of the estate.

"Tim and I entered into some discussion with re-

spect to funds and settlement, also the pending protest of the will, and we arrived at this sort of settlement, Tim giving me his word of honor, backed up if necessary, as he put it, with an affidavit, that, when the estate is ready for distribution and after Bob has been allotted his $500 and $500 has been set aside for each of Mae's two children ($1,000), the balance, after all bills have been paid, will be divided equally among the seven legal heirs above addressed viz—Burt, Ed, Bill, Tim, Dick, Ralph and Roxie, and I in turn have given my word of honor that the settlement under such terms is agreeable to me.

"Tim is being mailed a copy of this letter as per our agreement, and if it is not satisfactory to him he will so advise.

"Trusting that this will meet with the approval of all concerned, and that God Almighty will direct our actions in future dealings one with another, and that this will dispel for all time any thought of hatred, malice or dishonesty,      Your loving brother,
"(Signed) E. A. Collins"

This letter was mailed to and received by all concerned, including A. T. Collins, himself.

A. T. Collins replied to this letter on April 16, 1927, unqualifiedly accepting the provisions of the agreement as set out in the group letter of E. A. Collins, but suggested the addition of a certain explanation. His letter is as follows:

"4/16/27.
"Ed: Your note and proposed copy to rest of family rec'd last evening upon my return from Ellensburg.

"It is all right except think should be corrected to read, that as per our conversation of 13th, 'That Tim, in accordance with his previous statement to me before will was filed for probate and reiterated today', and then let the rest follow as I have marked on copy sent me, you know we touched on that before we separated the other day. For the rest its all right with me as cannot find anything objectionable in it. So if you will just incorporate the above insertion or suggestion be satisfactory.      Yours, A. T. C."

It will be observed that the letter of A. T. Collins, above set forth, contains no condition or qualification affecting the letter of E. A. Collins to all the children to the effect that the bequests to the grandchildren and nephew should be paid, and that, when the estate should be ready for distribution and all bills had been paid, the balance would be divided equally between the seven legal heirs, namely: Burt, Ed, Bill, Tim, Dick, Ralph and Roxie.

On about April 25, E. A. Collins wrote and mailed to A. T. Collins and the other brothers and sisters a second letter concerning the same subject embracing the suggestion made by A. T. Collins, as follows:

"Tim and I met by appointment at Tacoma on Apl 13 made final arrangements re-changing bank accounts from the Seattle banks to Nat Bank of Tacoma also securing a safety deposit box in the same bank for safe keeping of securities.

"At this conference some discussion was entered into regarding settlement etc at which time Tim agreed on his word of honor that when final settlement was made that he would agree to an equal settlement after Bob was allotted $500 and $500 to each of the two little girls (Monica and Loraine), and that the balance after all bills were paid should be divided into seven (7) equal parts to the legal heirs named above including myself. This promise he advised he will back up with an affidavit if necessary and further advises that it is a reiteration of his former promise to me made about the time the will was presented for probation, however, I did not understand the former promise to mean that in so many words but am willing to accept it as such, it being his understanding or rather what he meant, and there is a possibility that I misunderstood him or that I am mistaken.

"You will note that Tim is being mailed a copy of this letter, trusting that this will be the means of settling this controversy for good and final and that harmony will prevail among us brothers and sisters

and that God Almighty will assist us and direct our minds in future dealings one with another.

"Your brother, E. A. Collins."

There is no oral or other evidence in the record to the effect that there was contemplated any more formal contract or writing than that set forth in the letters above quoted.

Some months subsequent to the writing of the letters, however, a formal instrument was prepared by E. A. Collins, setting up the same agreement contained in the letters of April 14 and 16 between himself and A. T. Collins, which was sent by E. A. Collins to each of the brothers and sisters, and all signed it, with the exception of A. T. Collins. When it was presented to him in Seattle, on about August 25, a very few days before the expiration of the six months period within which a contest of the will could be instituted under the provisions of Rem. Comp. Stat., § 1385, he refused to sign it, the reasons therefor being in conflict. Ed Collins testified that Tim stated at that time that he had never gone back on his word yet, and he did not deem it necessary to affix his signature to the contract. According to his own testimony, Tim refused to sign it because he had received some dirty letters from different members of the family and that he would have nothing more to do with them. He kept the document a few days, and returned it, unsigned, upon the demand of Ed Collins, with a letter of enclosure, undated, reading:

"E. A. C. Returning enclosed paper without my signature, as per reasons explained to you the other day in our conversation. A. T. C."

In November, 1927, Ed Collins and Tim Collins, being requested by Mr. Davis, their attorney in the probate proceedings, to proceed to make distribution of the estate, met at his office in Tacoma. A. T. Collins

then refused to abide by the agreement of equal distribution. As a result this action was commenced.

A. T. Collins, defendant, admitted in his answer the allegations of the complaint as to the sending and receiving of the letters relied upon, but denied that there was a valid contract, for the reason that the so-called contract was secured by the false and fraudulent representations of E. A. Collins as to his authority to act for the parties concerned. It was alleged that E. A. Collins was unauthorized to represent the other members of the family when the agreement between them was reached on April 14 and 16, when the letters setting forth the arrangement were written. He alleged also that, immediately upon his ascertaining that the statements made by E. A. Collins as to his authority were not true, he notified E. A. Collins that the agreement theretofore consummated was not acceptable to him.

The alleged notice of non-acceptance of the agreement with E. A. Collins, for and on behalf of the rest of the heirs, relied upon by respondent is as follows:

"Seattle, April 27-27.
"E. A. C. It occurs to me that inasmuch as you choose to call upon the 'Supreme Being' for guidance in the last line, last paragraph, of your 'chain letter' of April 25th, that you would have put into practice that same thought, for your letter in parts is so inconsistent with the facts and you haggle over something that you know very well to be different from your statement in letter. I want to advise you that this letter does not meet with my approval in any way. You changed it almost entirely from the original draft you sent me, and therefore I do not intend to have anything to do with this late one.          A. T. C."

Although respondent testified postively that he deposited this letter in the mail addressed to E. A. Collins at Camp Lewis, his proper place of address, E. A.

Collins positively testified that he never received the letter.

The presumption of receipt of a letter deposited in the mail being no more than a prima facie presumption, is therefore offset by the positive evidence of non-receipt. *Ault v. Interstate Savings & Loan Ass'n.*, 15 Wash. 627, 47 Pac. 13; *Gibson v. Rouse*, 81 Wash. 102, 142 Pac. 464.

However, we deem that unimportant, for the reason that A. T. Collins did not, in that notice of rejection, base his rejection of the contract, alleged to have been made for an equal settlement of the estate, upon any lack of authority or power of agency on the part of E. A. Collins at the time the alleged contract was entered into.

The primary and controlling question to be determined in this case is whether there was a contract entered into with A. T. Collins for the division of the estate, and that question depends largely upon the authority of E. A. Collins, at the time the alleged contract was made, to act for and on behalf of the other heirs.

The record discloses much hostility upon the part of a number of the other heirs toward A. T. Collins. It also indicates that respondent knew that the other heirs were of the opinion that he had influenced their mother in the making of her will and in fact used coercion upon her. It was so stated in a letter written by respondent on February 7, 1927, to his brother W. L. Collins at Anaconda. There was more recrimination passed between respondent and some of the other heirs, but there can be no doubt that some of the heirs were determined to contest the will.

W. L. Collins gave respondent written notice that he intended to contest the will by letter written by him to A. T. Collins on April 2, 1927, a copy of which letter

was also sent to E. A. Collins. E. A. Collins also had a well formed intention to contest the will unless an agreement were reached to divide the property between the heirs equally. While there was much tergiversation on the part of Mrs. Thomas, she writing first in one tone to one brother and in another to another, E. A. Collins testified that, before the settlement was reached which was set forth in the general letter set out by E. A. Collins to the other heirs, when she was at his house at Fort Lewis for several weeks after the funeral of their mother, she directly authorized him to contest the will. In view of her evasive answers in the lengthy deposition taken of her testimony, and of her inconstancy as shown in her letters to the several brothers, we agree with the trial court that her evidence was not as reliable as that of her brothers, and we consider, further, that the contradictory evidence given by E. A. Collins and his wife thoroughly refutes her testimony that she had never given her assent to the contract. It is further refuted by the fact that she signed the contract that was signed by all of them in August, but which was refused by A. T. Collins. It is further controverted by the circumstance that she received a copy of the letters sent out by E. A. Collins, setting forth the substance of the contract arrived at between himself, for and on behalf of the other children, and A. T. Collins, and never, at any time, gave notice to anybody that she did not desire to make such contract. Tacitly she consented to it. Actually, by signing the contract to that effect in August, she consented to it.

This court is as competent to judge of the credibility and veracity of Mrs. Thomas as the trial court, since her testimony is by deposition which we have before us, together with her inconsistent letters to certain of her brothers. We are unable to accept her testimony

when she testified that she had never authorized E. A. Collins to represent her in making a settlement with A. T. Collins, and never told E. A. Collins that she desired him to institute a contest of the will or that she desired him to make a settlement on her behalf, when it is contradicted by her other acts and conduct and the direct evidence of E. A. Collins and his wife.

The only other heir and necessary party to the contract as to whom there is some question as to the authority he gave, is Ralph Collins of Butte. He was bequeathed, by the will probated, sums equal to $2,187.50, and could afford to be neutral. His brother who lived in Anaconda testified positively that Ralph told him to authorize E. A. Collins to do anything necessary to secure an equal division of the estate, and to contest the will, if desired. Although Ralph made apparently contradictory statements in an affidavit obtained from him, he in fact authorized the institution of the action against respondent in a letter dated November 22, 1927, and therefore must be held to have ratified and confirmed all the acts performed by E. A. Collins ostensibly as his agent.

We are not dealing here, with undisclosed principals, or secret powers, to which most of the cases cited by respondent, apply.

It is asserted by respondent that the letters and testimony show that nothing but preliminary negotiations were had between E. A. and Tim Collins looking to a completed contract to be entered into between them, which was never thereafter executed, and that therefore there was no contract.

As heretofore stated, there was no evidence on the part of anyone that there was to be any formal contract drafted and executed. The contract was oral, except that it was evidenced in a way by one of the parties to the action for and on behalf of himself and

his associates, and agreed to by respondent orally and in writing.

When respondent wrote the letter of April 16, 1927, to E. A. Collins, he stated that the letter of April 14 was satisfactory to him, with one exception, which he desired incorporated in it, and which addition was accepted by E. A. Collins. Respondent stated that otherwise the proposition was satisfactory to him, and he could not find anything objectionable in it. There was in this no suggestion of any qualification or modification of the agreement that had been entered into. Neither was there any intimation on the part of either that there was to be a more formal contract entered into between the parties.

The cases cited by respondent to the point that, where it was contemplated that there should be a complete written contract signed by the parties, there never was a completed contract until such contract had been executed, are not apt. *McDonnell v. Coeur d' Alene Lumber Co.*, 56 Wash. 495, 106 Pac. 135; *Stanton v. Dennis*, 64 Wash. 85, 116 Pac. 650; *Empson Packing Co. v. Lamb-Davis Lumber Co.*, 112 Wash. 75, 191 Pac. 833; *Pennington & Co. v. Hedlund Box & Shingle Co.*, 116 Wash. 292, 199 Pac. 235, are all cases where it was clearly shown that all the previous negotiations were preliminary to an intended formal written contract. Such is not the case here.

It is further contended by respondent, with which the trial court agreed, that there was no contract because the minds of the parties never met.

If E. A. Collins was authorized to act for and on behalf of the other heirs, except respondent, as we think he was, the minds of those parties certainly met and agreed upon the contract indicated by the letters of April 14, 16, and 25, 1927.

214

Respondent also contends that the alleged agreement is not mutual and therefore not enforceable, because appellants did not agree not to contest the will.

The sole object of any agreement between these heirs at law for an equal division of the estate was to avoid a contest of the will. If an agreement was consummated for an equal division of the estate, after the legacies to the nephew and grandchildren had been paid, there could be no possible object in a contest. Hence we can see no merit in this contention.

It is also insisted by respondent that the alleged contract was void because induced by fraudulent representations. This is based upon contentions that the statements by E. A. Collins that all of the other brothers and sisters were threatening to contest the will and that he was authorized on behalf of his other brothers and sisters to contract and waive their rights under the will, were false representations.

The trial court stressed the supposed fact that there was no evidence that E. A. Collins was authorized to waive any of the rights of the legatees under the will.

If the provisions of the will as to these heirs were set aside by an agreement for an equal division of the estate, that of itself would waive their rights under the will. Although the contract was very informal and inartificially expressed, there was no other purpose that could be attained than that of an equal division of the estate, rather than a disposition according to the terms of the will.

As to the assertion that E. A. Collins fraudulently represented that all of the other brothers and sisters were threatening a will contest, we think the evidence preponderates to that effect. Even the letters of respondent of February 7 and February 23, 1927, to "Bill" at Anaconda referring to knowledge he then had that the four absent members of the family had

given E. A. Collins their consent to represent them in filing a protest on the ground that the mother had not been in good health, or in her right mind and was influenced unduly, furnish strong evidence that they were then, in good faith, threatening a contest. While the parties referred to the contest as a "protest" of the will, a contest is undoubtedly what they meant. It must be remembered that the four absent members were the two daughters and the two sons who lived in other states. R. E. Collins lived in Auburn, Washington, and respondent and E. A. Collins lived in Pierce county. The four absent members were therefore all of the other children. R. E. Collins was here in Washington, and participated to some extent in the negotiations.

Under the record, as we read it, there were no false representations made by E. A. Collins as to his authority.

Respondent also maintains that the alleged contract was void for want of consideration; first, because the threat of appellants to contest the will was not made in good faith; and, second, because appellants, in fact, never agreed not to contest the will.

What we have heretofore said disposes of the second ground.

The first ground stated is a serious and complicated question.

If the agreement in this case was made, as we find it was, it is a family settlement of a dispute always regarded favorably in law. When no rights of creditors intervene, such agreements, if free from fraud, are upheld and enforced by the courts. See case notes, *Riffe v. Walton*, 105 Kan. 227, 182 Pac. 640, 6 A. L. R. 549, notes beginning p. 555.

Although the right to make testamentary disposition of one's property is a valuable right and should not be interfered with, except in the clearest of

cases, it is competent for the heirs of one to enter into an agreement for the disposition of the estate upon a plan different from that provided by the will.

As was said by the supreme court of Oregon in *Loughary v. Simpson,* 75 Ore. 219, 145 Pac. 1059:

"Family agreements of this sort are looked upon with peculiar favor by the courts, and will be upheld unless there appears to be some gross injustice or fraud in connection therewith."

See, also, *Hardin v. Hardin,* 201 Ky. 310, 256 S. W. 417, 38 A. L. R. 756, notes beginning page 759.

We have decided that a promise to refrain from contesting a will was a sufficient consideration for a contract to convey an interest in the estate by residuary devisees. *Perkins v. Allen,* 133 Wash. 455, 233 Pac. 655. In that case there was no question raised but that there was a real and good faith intention to contest the will.

In the present case, the evidence abundantly shows an actual intention to contest the will on the part of one or more of the heirs. Whether all of the heirs, including the absent ones, had such a firm intention, we consider unimportant. Any number, or even one, under our statute could have contested the will under the six months period provided by statute. It is apparent that an attempt was made by and for all the heirs, except respondent A. T. Collins, to secure a satisfactory settlement, or, failing in that, to join together in a contest. It is also plain from the record that, whatever intention the other absent heirs had during that six months period, W. L. Collins of Anaconda was very determined to contest the will, and notified both executors not to make any division of the estate during the six months period. This notice was given before the contract was entered into. W. L. Collins

also testified that he had the intention to contest the will.

Under the record in this case, therefore, there were undoubtedly threats to contest the will prior to the making of the agreement for settlement.

The question then arises, whether such threat to contest a will must be based upon reasonable grounds for setting the will aside, in order to constitute such threat a good faith threat and a sufficient consideration for a contract to avoid a contest.

While there are authorities to the contrary, notably in Kentucky and Alabama as cited in the brief, the great weight of authority is to the effect that an agreement by a legatee, under a will to pay money to an heir at law of the testator for forbearance of his right to contest the will, rests upon a valid consideration and is valid, and it is immaterial whether or not there were valid grounds for the contest. *Sheppey v. Stevens,* 185 Fed. 147; *Rector, etc. St. Mark's Church v. Teed,* 120 N. Y. 583, 24 N. E. 1014, and cases there cited; *Peterson v. Hegna,* 158 Minn. 289, 197 N. W. 484; *Leach v. Fobes,* 11 Gray (Mass.) 506, 71 Am. Dec. 732; *Cole v. Cole,* 292 Ill. 154, 126 N. E. 752; *Asbury v. Asbury,* 218 Ky. 707, 292 S. W. 311; 12 C. J. 322. See, also, cases cited in notes in 6 A. L. R. and 38 A. L. R., *supra.*

Since there was no fraud shown or even alleged, except as to the alleged misrepresentation of E. A. Collins of his authority, which we have hereinbefore determined, we conclude that there was a legally sufficient consideration for the contract.

The judgment is reversed and the cause remanded with instructions to enter a judgment or decree in favor of appellants for the specific performance of the contract.

Tolman, Fullerton, Parker, and Beals, JJ., concur.