[No. 22451. Department One. September 22, 1930.]

LLOYD HUNTER, *Appellant*, v. SAMUEL H. JORDAN, *Respondent*.[1]

*Edwin H. Flick,* for appellant.

*James C. McKnight,* for respondent.

[1]Reported in 291 Pac. 471.

TOLMAN, J.—Appellant, as plaintiff below, filed an original complaint in this cause, which the respondent, as defendant, attacked by a motion to strike certain parts, a motion to make more definite and certain as to particular features and, also, by general demurrer; all of which were sustained with leave to file an amended complaint. Thereupon a first amended complaint was filed and a demurrer thereto was sustained, and the right to file a second amended complaint was expressly denied. Thereafter, the plaintiff petitioned the court for leave to file a second amended complaint, supporting his petition by affidavit and accompanying it with his proposed amended pleading. The court, having heard counsel and considered the petition and the proposed second amended complaint, denied the application and refused leave to file the proposed pleading upon the ground that it failed to state a cause of action, and thereupon dismissed the plaintiff's action with prejudice, from all of which the plaintiff has appealed.

We need only consider the proposed second amended complaint, as, if it fails to state a cause of action, then there was no error in denying the right to file it.

The pleading contains allegations as to the death of Mabel Hunter Seaborg (or Jordan), leaving a last will and an estate then in course of probate in the superior court for King county. The allegations seem to be broad enough to make the probate proceedings a part of the complaint, and presumably upon that theory a transcript of those proceedings is brought here by a bill of exceptions. By this transcript, it appears that the decedent made a will by which she bequeathed to her brother, the appellant, $10,000; a like amount each to two sisters, a number of small bequests aggregating $700, and her personal effects, books, jewelry and the like were, by the will, given to five named personal

friends. All of her real estate is devised to a nephew and niece in equal shares, and the same nephew and niece are made residuary legatees. The final decree in probate shows the estate to have had a gross value of $44,186.44, and a net value, after paying all indebtedness, which was inconsiderable, and all costs of administration, which were considerable, of $38,699.58, so that it appears that, if the will had been admitted to probate, all bequests would have been paid and a substantial sum would have passed to the residuary legatees. The will, however, was not admitted to probate, because of proof of the fact that, after its execution, Mabel Seaborg was legally married to the respondent in this action, and the estate passed to him as the surviving husband.

Appellant, after pleading his lack of knowledge as to the subsequent marriage between the decedent and the respondent, and his belief that there was no valid marriage entered into between the two, alleges:

"That the said plaintiff shortly after the death of said decedent proceeded to effectuate his claims to said community property and his claims under said will, and engaged attorneys to prosecute said claims and the said will was duly filed for probate, and such steps as were necessary to lead up to its probate were duly taken, and that his said sisters likewise engaged attorneys to present their claims for said community estate and for their rights under said will, sincerely believing that they had a right to the bequests and devises under said will, and while plaintiff's attorneys and plaintiff were proceeding to litigate these matters and inquiring into the question of a marriage on the part of said defendant Samuel H. Jordan and said Mabel Hunter Seaborg Jordan, so called, that on or about December 15, 1928, the said Jordan desiring to obtain said estate, community and otherwise, and to speedily adjust said litigation and to close said estate, and so that he might be secure from further litigation herein agreed with said Hunter, plaintiff herein, that if he

would discharge said litigation and would ask and see to it that his sisters, the remaining claimants in this litigation would desist from further attack upon said claims of said Jordan to said estate, community and otherwise, and would permit him to take over to himself all of said estate, he, the said Jordan, would before the closing of said estate turn over to said Hunter in full settlement of any and all rights of himself or the sisters in said estate, the sum of eight thousand dollars ($8,000), further agreeing and stipulating that said eight thousand dollars ($8,000) should be paid directly to and for the benefit of said Lloyd Hunter, plaintiff herein, and that, acting upon the faith of said promise and sincerely believing he had rights in the premises herein set forth, the said plaintiff obtained the agreement on the part of his sisters that they would refrain from further attack on the part of themselves against said Jordan's claims to the separate estate belonging to said decedent, and the said plaintiff acting upon said promise from thenceforth refrained from pushing his claims under said will, or against or upon said community estate, and agreed further that the said defendant Samuel H. Jordan might proceed to take all of said estate to himself, community and otherwise, on condition that he give over to Lloyd Hunter, plaintiff herein, the sum of eight thousand dollars ($8,000) prior to the closing of said estate, as was agreed by him, to which his sisters also agreed.

"That the said promises and said agreements herein mentioned, as stated, were made with one J. W. Maxwell, of the city of Seattle, in the interest of and for the benefit of said Lloyd Hunter, on or about December 22, 1928, and with one Mrs. McDonald, and a Mrs. Morgan, of the city of Seattle, on or about the same times, and with other and diverse persons in the city of Seattle, King county, Washington, with suggestion on the part of Jordan that such information and such promise be conveyed to said plaintiff, which was done and which offer, promise and agreement was accepted by said plaintiff, and as stated acquiesced in and acted upon.

"That on or about March 28, 1929, due order in conformity with statute was made, dismissing the probate

of said will, and six months having elapsed subsequent to initiation of said probate proceedings on said will, said will is no longer subject to being proved in the courts of the state of Washington, and the said plaintiff is therefore without remedy in said matter and since the agreement and acceptance thereof on or about December 22, 1928, the said defendant has permitted and acquiesced in and has allowed the said defendant Samuel H. Jordan to handle all of the community estate hereinbefore mentioned without interference and that the said Samuel H. Jordan has changed the status of said community assets to considerable extent since said date, and that plaintiff is informed and believes and states the fact to be that the said Jordan has now definitely repudiated said promises.''

It should be observed that, in the probate proceedings, both by the refusal to admit the will to probate and by the decree of final distribution awarding the entire estate to the respondent, a court of competent jurisdiction, with all parties in interest before it, has twice adjudicated that a legal marriage was consummated between the decedent and the respondent. Therefore appellant cannot, and does not, attack the marriage in this action.

■ Assuming, for present purposes, that the complaint now under consideration alleges a binding contract between respondent and the appellant that the will shall be suppressed or set aside and that $8,000 would be paid as consideration therefor, and also assuming that the pleading shows that the sisters are bound by that agreement, yet, on the face of the complaint, aided by the will to which it refers, it appears that four legatees to whom an aggregate of $700 was bequeathed, five to whom specific property was given, and two residuary legatees, or eleven persons in all, each of whom had a substantial interest under the will, were not parties to the agreement, and were not even informed that such an agreement had been entered

into, so far as the pleading discloses. These persons, having a less interest under the will than the brother and the sisters, might well depend upon them to present and support the will, and if that support were secretly withdrawn and the will thereby defeated, the result would be loss and injustice to them.

The law in this respect seems to be well settled.

"Though in some jurisdictions an agreement to dispense with the probate of a will has been declared to be against public policy and void, in a majority of the decisions on the point it has been held that all the persons interested in a decedent's estate may by agreement divide the estate among themselves, without probating such decedent's will or administering the estate, and the validity of a contract having for its sole purpose the disposition of property in a manner different from that proposed by a testator, even where the contract contemplates the rejection of the will when offered for probate or its setting aside when admitted to probate, when it is entirely free from fraud, and is made by all the parties in interest, would seem to be freely conceded." 28 R. C. L. 357.

Page on Wills (2d ed.), § 631, is to the same effect, but, after stating the general rule in practically the same language as the authority just quoted, proceeds:

"The propriety of the rule that contracts to suppress valid wills are themselves valid is, at best, very doubtful. A devisee has power to renounce a devise, or to dispose of property which has been given to him by will. If two legatees agree upon any division of their legacies between themselves, another legatee can not be heard to object. At the same time a competent testator has power to dispose of property by will. The objection to these contracts is that they do not purport to be contracts by a devisee renouncing or transferring all or part of his devise under a valid will; but they provide for a collusive decree which declares that the will is invalid. To suppress a will is usually criminal, and it would seem contrary to policy to enforce a contract which provides for suppressing a will

and for rendering a collusive decree which makes a finding of fact contrary to the truth." Page on Wills (2d ed.), § 631.

Where the agreement to suppress a will is by less than all of the persons interested, the courts seem to be practically unanimous in holding the agreement void, against public policy as tending to thwart justice and as a fraud upon the beneficiaries excluded from the agreement. *Cochran v. Zachery,* 137 Iowa 585, 115 N. W. 486, 16 L. R. A. (N. S.) 235; *Gugolz v. Gehrkens,* 164 Cal. 596, 130 Pac. 8; *Mercier v. Mercier,* 50 Ga. 546; *Ridenbaugh v. Young,* 145 Mo. 274, 46 S. W. 959; *In re Rice's Will,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778.

Here and there may be found a case where all parties have joined in the agreement, and it has been upheld, such as *Grochowski v. Grochowski,* 77 Neb. 506, 109 N. W. 742, but we have found no case where such an agreement has been upheld when, as here, substantial interests are left out.

Appellant seems to rely somewhat upon our own cases of *Trimble v. Donahey,* 96 Wash. 677, 165 Pac. 1051, and *Collins v. Collins,* 151 Wash. 201, 275 Pac. 571. In the former case, the contract was oral and was held to be void under the statute of frauds because the estate consisted of real property, therefore it is not an authority in appellant's favor. Apparently, there, the agreement was by all interested parties, but, as the opinion was rested upon the statute of frauds, it was not necessary to discuss the question generally.

In the *Collins* case, *supra,* the agreement was not to contest a will, which may or may not be a different question from an agreement to suppress a will, but at any rate all parties who might be in any way affected were held bound by the agreement, and the case is not an authority here.

The original and first amended complaints were faulty in the same respect, and we conclude that the pleader could not truthfully allege an agreement by all of the interested parties. The proposed second amended complaint failed to state a cause of action, and there was no error in the ruling of the trial court.

The judgment is affirmed.

MITCHELL, C. J., PARKER, and BEALS, JJ., concur.