HAROLD HOHENSEE AND GEORGIA HOHENSEE, PLAIN-
TIFFS AND RESPONDENTS, v. THEODORE CHEMODUROW,
DEFENDANT AND APPELLANT.

No. 11750.
Submitted April 7, 1970.
Decided June 10, 1970.
Rehearing Denied July 14, 1970.
470 P.2d 965.

Evalyn Carson (argued), Ryegate, Robert W. Holmstrom,
Billings, for defendant and appellant.

Gene I. Brown (argued), Thomas I. Sabo, Bozeman, for
plaintiffs and respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion
of the Court.

The defendant appeals from a judgment awarded by the district court of the eighteenth judicial district, sitting without a jury.

The defendant Dr. Theododre Chemodurow is a physician and psychiatrist practicing in Billings, Montana. The plaintiffs are Harold and Georgia Hohensee, brother-in-law and sister of defendant. This dispute arose over the plaintiffs' operation of a ranch owned by the defendant.

Defendant purchased this ranch from his grandmother, Abigail Smart, in 1958. One year after purchasing the ranch defendant purchased an adjacent 160 acres, known as the McRoberts Place, which with the home ranch resulted in a ranch of some 600 acres of land with 500 acres under irrigation.

The parties agreed plaintiffs would live on the ranch and operate it. Plaintiffs maintain they were to be paid wages for a period of time until the ranch produced enough income in excess of expenses to permit them to divide $40,000 per year equally with the defendant. The agreement for the operation of the ranch was a home written contract signed by all parties, and lists the amount of wages to be paid plaintiffs as "$10,000—$20,000 a year" and the time the contract was to be in force as "2-5 years".

Since the ranch did not make money and there was controversy between the parties, in 1967 defendant demanded the plaintiffs vacate the ranch. Before vacating the ranch plaintiffs insisted upon the execution of a settlement agreement. This agreement is entitled: "FINAL SETTLEMENT IN CONNECTION WITH THE OPERATION OF THE SMART PLACE, IN FINAL AND COMPLETE SETTLEMENT OF ANY AND ALL CLAIMS, CHEMODUROW AND HOHENSEE AGREE AS FOLLOWS". The settlement agreement was a home drawn instrument dealing with the distribution between the parties of the machinery, animals, hay, and grain on the ranch. Plaintiffs maintain their salary was never discussed during the negotiations that led to the settlement agreement.

Plaintiffs testified that an attorney advised them the settlement agreement would not affect any rights they had to unpaid wages and they could later sue for such wages. The settlement agreement was signed by all parties and at the end of January 1968, plaintiffs vacated the ranch.

Thereafter plaintiffs initiated this action alleging a claim for relief based on money loaned to the defendant and not repaid, and a claim based upon wages due in the amount of $20,000 per year for seven years. The claim for money loaned was abandoned at trial and plaintiffs relied solely on their claim for unpaid wages.

The trial court, among other things, found the ranch contract required that defendant was to pay plaintiffs a salary of $10,000 to $20,000 a year for the first 2 to 5 years of operation or until the ranch income from livestock sales would reach $40,000 per year at which time plaintiffs were to receive 50% of the profits of the livestock sales in lieu of salary plus living quarters and expenses from the ranch income.

The trial court also found that the final settlement entered into by the parties when the ranch relationship was dissolved affected only the division of physical properties and assets of the ranch and did not affect any claims for wages due and unpaid under the original ranch contract; that wages were due plaintiffs for the 9 years between 1959 and 1967 at the rate of $10,000 per year, diminished by certain monies paid to the plaintiffs during that period.

The trial court's conclusions of law ruled the ranch contract binding on the parties and the settlement agreement a valid and binding division of the physical assets of the ranch; that plaintiffs complied with their part of the contract and defendant owed plaintiffs $81,036.23 in back salary. Judgment was entered accordingly on July 15, 1969.

Defendant appeals and raises several issues based on alleged errors in the trial court's findings of fact and conclusions of law. The two material issues presented are: (1) Whether

the complaint states a claim entitling the plaintiffs to relief. (2) Whether the settlement agreement executed by the parties is in fact a full and final settlement barring the plaintiffs' claim for unpaid salary.

In view of our determination of this case on issue No. 2, we will not discuss issue No. 1 except to note that sufficient facts were set forth in the plaintiffs complaint to state a claim for relief under Rule 7, M.R.Civ.P.

Issue No. 2 concerns the validity and effect of the final settlement made by the parties. What does "FINAL SETTLE-MENT IN CONNECTION WITH THE OPERATION OF THE SMART PLACE, IN FINAL AND COMPLETE SET-TLEMENT OF ANY AND ALL CLAIMS" mean?

Plaintiffs take the position that the trial court being confronted with the task of determining the intentions of the parties from a confusing and "unartfully drawn instrument", reached the conclusion that the settlement did not include the claim for salary and should be sustained on this conclusion. Plaintiffs note that the trial court heard the testimony revealing the hard negotiations between the parties for the possession of the chattels and the premises; that both parties were represented by counsel and the trial court heard testimony to the effect that an attorney had advised plaintiffs the salary claim would not be included; that the testimony revealed throughout the negotiations that only the possession of chattels and the premises were considered; and, last but not least, no mention was made of any other claims. The last position of plaintiffs that no mention was made of "other claims" is untenable for the instrument speaks for itself.

The facts here indicate the relationship between the parties had become strained and they sought to terminate the relationship by making an agreement to settle the controversy between them.

This Court in Barbarich v. Chicago, etc., Ry. Co., 92 Mont. 1, 9 P.2d 797, had this to say regarding settlements:

"The law favors the settlement of disputes out of court, either before or after an action is begun, and when the parties are shown to have made a valid settlement they will be held thereto, in the absence of fraud or mistake. (Norum v. Ohio Oil Co., 83 Mont. 353, 272 P. 534)".

A settlement of a family dispute is always regarded favorably in the law and if the agreement does not interfere with the rights of others these agreements will be upheld by the courts. Collins v. Collins, 151 Wash. 201, 275 P. 571, 575.

This Court held in *Barbarich* that the intention of the parties would control the effect of their transaction in making a settlement. The parties to the settlement agreement involved here announced their intentions and purpose by the following language: "FINAL SETTLEMENT IN CONNECTION WITH THE OPERATION OF THE SMART PLACE, IN FINAL AND COMPLETE SETTLEMENT OF ANY AND ALL CLAIMS".

In Maltby v. Sumner, 169 Kan. 417, 219 P.2d 395, 403, the statement that "The parties hereto agree that this contract shall be considered as a compromise and settlement of all differences heretofore existing between them" was held to make the settlement all inclusive and did not limit it to only part of the dispute existing between the parties at the time it was executed. The document signed by the parties in the instant case is based on a similar statement of intent.

Plaintiffs contend the settlement agreement they signed referred only to the division of physical property on the ranch and did not include their claim for unpaid salary. However, the document itself reads "IN FINAL AND COMPLETE SETTLEMENT OF ANY AND ALL CLAIMS" and divides the property on the ranch with a particularity and definiteness that extends to one "flower-stamped saddle" and five named horses. This document cannot be described as less than a complete and inclusive settlement without overthrowing the clear intent of the parties as expressed in the title thereof.

In W. T. Rawleigh Co. v. Washburn, 80 Mont. 308, 314, 260 P. 1039, this Court said:

"It is not the province of courts to make contracts for parties sui juris, but rather to interpret and enforce them, as made by the parties themselves, in accordance with their terms, when legitimate and based upon valid consideration."

The judgment of the trial court is reversed and the case dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, HASWELL and DALY, concur.